No. 8682.

BENFORD v. YOCKEY.

1. CONTRACTS—*Construed.* Defendant exchanged properties with plaintiff, agreeing to place upon the market those received by him, and if sold for exceeding a specified sum, credit plaintiff with the excess, upon notes which plaintiff had executed to him. In disposing of a certain farm, one parcel of the properties which he had received in the exchange, defendant accepted another property. *Held* that in accounting with plaintiff, the last mentioned parcel must be rated at the valuation at which he had accepted it, even though in fact such valuation was greatly in excess of the true value.

Plaintiff received in the exchange of properties a certain rooming house, upon which she executed to defendant a mortgage for the difference in value between what she had received, and what she had parted with, in the exchange. She afterwards sold the rooming house to one who assumed the mortgage. *Held* that such disposition of the rooming house in no way exonerated defendant of his obligation to account to plaintiff for the excess which he had received for the farm; that in effect plaintiff retained an interest in the farm to the extent of such excess; that the provision for a credit upon plaintiff's notes was a specified mode of payment, but not the exclusive mode; and that though no longer liable upon her notes she was entitled to recover the amount to which, if her liability had continued, she would have been entitled to a mere credit. *Id.*

2. *Consideration.* An alleged concession of what the one to whom it is made is already entitled to, is not a consideration for any new undertaking upon his part.

3. APPEAL AND ERROR—*Finding on Conflicting Evidence,* will not be disturbed.

4. EVIDENCE—*Admissions in Pleading,* are not to be retracted.

5. PLEADINGS—*Construed.* Defendant in his answer alleged that on sale by plaintiff of the rooming house, "her interest in the payment of the said notes and credit that might be made thereon ceased", construed to admit a release of plaintiff from liability upon the notes.

*Error to Denver District Court, Hon. John T. Shumate, Judge.*

*Department.*

Mr. JOSEPH D. PENDER and Mr. ANDREW H. WOOD, for plaintiff in error.

Mr. H. L. LUBERS, for defendant in error.

Opinion by Mr. Justice Teller.

Defendant in error brought suit against the plaintiff in error to recover an amount alleged to be due on a contract for exchange of properties.

Designating the parties as they appeared below, the plaintiff relies upon a contract in writing under which she was to receive a certain apartment building owned by the defendant, and she was to convey to the defendant several pieces of property, including an 85 acre farm. She was to put in her property at $16,000, and to execute a mortgage upon the apartment building for the balance of the purchase price, viz; $40,000. The agreement provided that:

"the property conveyed by the party of the 2nd part (the plaintiff) to the party of the 1st part (the defendant) is to be placed on the market for sale by him, and if the same shall have been sold before the maturity of the notes hereby agreed to be executed by the party of the 2nd part and secured by mortgage upon said apartment property, for a price, after paying all commissions and charges for selling the same over and above the sum of $16,000, then the party of the 2nd part shall be credited upon said notes, or such part thereof as may be unpaid, of the amount so received upon said sale above said $16,000."

The transfers were duly made, and all the properties transferred by the plaintiff to the defendant were sold by the latter. The plaintiff claims that the net sum of the sales above costs and expenses was $18,564, and demand was made for the excess of $2,564. Its payment being refused, suit was brought to recover it.

There is no dispute as to the net amount received for any of the properties except the 85 acre farm. The plaintiff claims that the farm was sold by the defendant to one Rogers, for a consideration of $13,000, paid by the transfer to defendant of a piece of city property, and $5,000 in cash. It is admitted that the consideration named in the deed to Rogers was $13,000. Defendant denied that the consideration was in fact $13,000, and offered, on the trial, to prove

that the value of the city property received from Rogers was not more than $5,500. The offer was refused.

It is now contended that the court should have considered the actual value of the property and not the value stipulated in the deed, or by the parties. We cannot agree with this contention.

The defendant was required by the contract to place the property on the market, and sell it. If he chose to take property in exchange, he ought to account for that property at the value at which he took it; in other words, at the agreed valuation as between him and Rogers.

The principal error discussed is that the evidence was insufficient to support the finding in favor of plaintiff on this question of consideration. There was a good deal of evidence on both sides of the question, and on this conflicting evidence the trial court found in favor of the plaintiff. We cannot say that it was not justified in so doing, and the finding will not be disturbed.

One of the defenses was that an oral contract was entered into by the parties, subsequent to the making of the written contract, and before any part of said contract had been performed, whereby the defendant was relieved of any obligation to place said farm on the market, or to sell it; and that the farm was to be considered, in carrying out the contract, as if sold for $8,000.

When testimony in support of this defense was offered objection was made to it on the ground that the contract sought to be proved was within the statute of frauds; and that it was without consideration. The evidence was in part by deposition, and so much of the depositions as related to the oral contract was excluded. The testimony of Snell, a witness for the defendant, on the oral contract, was excluded under the same objections. These rulings are assigned as error.

Whether or not the excluded evidence tended to show a contract of sale, and so was void because not in writing, need not be determined; because the objection that there was no

consideration shown was good. Boyer's testimony as to this new contract is as follows:

"At this time and in consideration of said Ada M. Yockey getting the possession of the I. X. L. Apartment, on the 15th of October, 1908, said Ida M. Yockey agreed to accept the net sum of $8,000, as consideration of the 85 acres mentioned in the contract. This was accepted by Benford and the deal was closed according to this verbal agreement."

The defendant's report of the conversation, as set out in his deposition is:

"Well, if I remember, Mrs. Yockey came into the office and said: 'I have a chance to sell the 85 acres for $8,000, but I will have to pay a commission. I don't want to do that.' 'Well, now,' I says: 'Mrs. Yockey, if you want to let me have the 85 acres for $8,000, there will be no commission.' She said: 'All right, you can have it.' So that ended that."

Mr. Snell testified that Benford said to Mrs. Yockey who had said she could sell the farm for $8,000, but didn't want to pay a commission:

" 'Well, if you will take $8,000 for that place, why don't you let me have it?' Mrs. Yockey said she would."

There was no other testimony on this subject offered.

It is urged, however, that a consideration is shown by Boyer's testimony, according to which it consisted of the agreement to give Yockey possession of the apartment on October 15th. But that cannot serve as a consideration, because she was, by the terms of the written contract, entitled to such possession on that date. There was, therefore, no error in excluding this testimony, since it could not, without evidence of a consideration, establish a new contract to take the place of the contract in writing; and there is no such evidence.

It is further urged that in any event the money judgment is wrong since the contract provided only for a credit on plaintiff's notes, and she having been released from obligation thereon, had no right of credit, and hence no right of action.

The correctness of this contention must be determined by a consideration of the contract, and the circumstances under which it was made. Mrs. Yockey conveyed the lands to Benford as a payment of $16,000 on the property he conveyed to her, reserving an interest in her property to the extent that it might sell above said sum. This interest was Mrs. Yockey's, and the contract provided that anything received by Benford on sale of the lands above $16,000 should be credited on the notes which she owed him. She was thereby to receive pay for the interest reserved. When, however, she was released from liability on the notes, she still owned this interest in the lands, she not having transferred to Mudd, who assumed the liability on the notes, any right to this credit.

To give her credit on the notes was a natural way of paying her for the reserved interest in the land, when sold; and it is not reasonable to suppose that it was intended to be the exclusive mode of payment. If she could, as she did, sell the apartment house and induce the buyer to assume the payment of the notes, without transferring the right to this contingent credit, there is nothing to show an intention that she should release such interest to Benford.

The fact that she reserved it shows that she thought it of value, and without evidence that she cared for it only as a possible source of credit on her notes, we cannot assume that she so regarded it.

There is nothing in this inconsistent with her securing a release from Benford on the notes, nor has anything been done in the premises which makes it impossible to carry out the contract according to its clear intent. Any other view would give to Benford the excess above $16,000 without any consideration therefor.

It is urged that, because the court refused to find as to Mrs. Yockey's release on the notes, she is entitled only to credit thereon; but plaintiff in error cannot now question the fact of the release, he having admitted in the answer that on the sale to Mudd "her interest in the payment of

said notes, and in all credits that might be made thereon thereafter ceased."

Finding no error in the record, the judgment is affirmed.

Chief Justice White, Mr. Justice Bailey and Mr. Justice Garrigues dissent.

Decided November 6, A. D. 1916.    Rehearing denied May 7, A. D. 1917.