# No. 15,712.

WELLS AIRCRAFT PARTS COMPANY *v.* ALLAN J. KAYSER COMPANY.

(194 P. [2d] 326)

Decided May 10, 1948.

Messrs. PERSHING, BOSWORTH, DICK & DAWSON, Mr. SAMUEL S. SHERMAN, JR., Mr. MICHAEL E. REIDY, for plaintiff in error.

Messrs. ROTHGERBER & APPEL, Mr. EDWARD H. SHERMAN, for defendant in error.

In Department, before Mr. Chief Justice Burke, Mr. Justice Jackson and Mr. Justice Luxford.

PER CURIAM.

WE will refer to the parties as they appeared in the trial court. Allan J. Kayser Company, a limited copartnership, brought suit against Wells Aircraft Parts Company, also a limited copartnership, to recover damages in the sum of $3,161.74, which the plaintiff claimed to have suffered as a result of the alleged wrongful cancellation of a contract, under the terms of which the plaintiff agreed to manufacture certain steel aircraft fittings out of raw forgings to be supplied by the defendant.

The damages asked by the plaintiff were based on the expenses in tooling up, and preparing to perform the contract which consisted solely of a written purchase order dated May 28, 1943, executed by the defendant in favor of Allan J. Kayser individually. The order was assignable only with the written consent of the defendant, and no express assignment was ever made by Kayser to the partnership.

Defendant's answer contains five defenses. First, that the complaint fails to state a claim against the defendant upon which relief can be granted; second, defendant denies that it gave the order to the plaintiff; third, that Allan J. Kayser wholly failed to manufacture and deliver the fittings; fourth, that Allan J. Kayser substan-

tially failed to manufacture and deliver the fittings; and fifth, that the fittings were to be manufactured on a special machine which Allan J. Kayser was to construct but which he failed to do.

The case was tried to a jury which returned a verdict for the plaintiff in the sum of $2,047.68; appropriate judgment followed, and the cause is formally presented for our consideration.

Defendant specifies seven points of alleged error but those urged may be reduced to three, to wit: First, that the court erred in not sustaining the defendant's motion to quash the service of the summons; second, that the plaintiff is not the real party in interest; and third, that the net loss which the plaintiff would have sustained from full performance of the contract should have been deducted from the damages awarded.

1. Summons was served upon J. A. Kissinger as the defendant's managing agent in Denver, July 29, 1944. Defendant failed to plead within the time allowed and default judgment was entered for the plaintiff July 29, 1944, in the amount of $3,335.54. August 21, 1944, defendant appeared specially and moved to quash the service of the summons upon the ground that all of the partners of defendant, a limited partnership, were residents of the state of California, were not personally within the state of Colorado, and that the pretended service upon their alleged managing agent under Rule 4 (e) (4) Rules of Civil Procedure was ineffective and void. The trial court overruled that motion September 15, 1944.

This ruling, denying defendants motion to quash, would seem to be an appealable order. *Mandel Bros. v. Victory Belt Co.* (C.A. 7th Cir.), 15 F. (2d) 610; *Martin Bros. Box Co. v. Fritz,* 228 Ia. 482, 292 N.W. 143. No reversal of this order by writ of error was sought by the defendant, but on September 29, 1944, it made application to this court for a writ of prohibition which was denied October 2, 1944. October 7, 1944, defendant

moved to set aside the judgment and be permitted to answer on the merits. In the motion defendant alleged. that it had made a mistake of law as to the jurisdiction of the court over its person, or as to the validity of service of process upon its managing agent — setting forth that when the summons was transmitted to defendant it was examined by Raymond P. Wells, a partner and attorney at law, and that he had concluded that such service was improper. An accompanying affidavit discloses that defendant had a good and sufficient meritorious defense; that its failure to plead. or answer was due to mistake, inadvertence, surprise or excusable neglect. As a result of this showing the trial court, on December 7, 1944, entered an order providing that, upon posting surety company bond by defendant, the default judgment should be set aside and defendant be permitted to answer. There was a reservation to both parties of the right of review.

January 4, 1945, defendant filed an answer, setting forth the five defenses heretofore enumerated, and filed a bond. Notwithstanding that these defenses went to the merits, and the subsequent trial resulted in a judgment considerably less than the amount of the default judgment, counsel for defendant now claim they should not be precluded from again here raising the jurisdictional question.

It would seem that this right has been waived. It already has been noted that no appeal was taken from the trial judge's order in which he ruled adversely on their preliminary motion questioning the jurisdiction. It appears that counsel rely on Rule 12 C. (b) R.C.P. Colo., authority for their position. Rules 55 C (c) and 60 C (b), R.C.P. Colo., appear to be the applicable provisions under which a defendant against whom a judgment has been entered may move to set it aside. Rule 55 C (c) reads: "For good cause shown the court may set aside an entry of default and, if a judgment by default has been entered, may likewise set it aside in ac-

cordance with Rule 60 C (b)." The first sentence of Rule 60 C (b) reads: "On motion the court, upon such terms as are just, may relieve a party or his legal representative from a judgment, order, or proceeding taken against him through his mistake, inadvertence, surprise, or excusable neglect." Both provisions by their very terms imply that the moving party consents to the jurisdiction of the court and to a trial on the merits. Here the affidavit that accompanied defendant's motion to set aside the default judgment showed an abandonment of the idea that the service was invalid and a desire to plead solely on the merits.

This principle, that a party who seeks to set aside a judgment and plead to the merits has thereby entered a general appearance and waived the right to question a summons, appears to have been consistently recognized in this jurisdiction. In *Pierce v. Hamilton,* 55 Colo. 448, 452, 453, 135 Pac. 796, we so held and briefly digested the following cases to like effect: *Balfe v. Rumsey & S. Co.,* 55 Colo. 97, 133 Pac. 417; *Everett v. Wilson,* 34 Colo. 476, 83 Pac. 211; *Barra v. People,* 18 Colo. App. 16, 69 Pac. 1074. See, also, *Stubbs v. McGillis,* 44 Colo. 138, 96 Pac. 1005. The federal courts likewise seem to have adopted this principle: *Jackson v. Heiser,* U.S.C.C.A., 9th Cir., April 30, 1940, 111 F. (2d) 310; *Withers v. Starace,* 22 Fed. Supp. 773. A similar ruling has been adopted in other jurisdictions: *Groves v. Illinois Publishing & Printing Co.,* 327 Ill. App. 544, 64 N.E. (2d) 562; *Leffler v. Todd,* 316 Mass. 227, 55 N.E. (2d) 767; *Farmington Mutual Fire Ins. Co. v. Gerhardt,* 216 Wis. 457, 257 N.W. 595.

2. On the second question it is strenuously urged by the defendant that it had no dealings with plaintiff, a limited partnership, of which it had no knowledge until the institution of this suit, but that its dealings were entirely with Allan J. Kayser, an individual, and since the order was not assignable without the consent of the defendant, and was never in fact as-

signed, that plaintiff is a stranger to the transaction and not a party in interest.

There was evidence that several months before the order in question was given, Kayser had discussed the formation of this limited partnership with several members of his family, and friends, and a tentative agreement between them was reached to form such a partnership for the purpose of entering into contracts of this type. In furtherance of this agreement, one of the partners paid her contribution to the partnership capital on May 3rd. However, the certificate of limited partnership was not acknowledged until July 15th, the day on which, by its terms, it became effective, and it was not recorded until about September 8, 1943. There was evidence that Kayser had introduced James Kissler, one of the partners, to a Mr. Vogel, at that time the Denver representative of the defendant, prior to May 15th, as one of his associates, and also introduced Mr. Kissler to Mr. Wells, a member of the defendant partnership, as his partner on an occasion about May 15, 1943, while Mr. Wells was in Denver.

The evidence of plaintiff further showed that Kayser accepted the order of May 28 on behalf of the partnership and that the partners were to participate in the profits in proportion to the amount each invested. That the expenditures for which suit was brought came from partnership funds is undisputed.

Defendant in its brief states that: "The jury may well have found that Mr. Kayser's two introductions of Mr. Kissler established knowledge on the defendant's part that it was contracting with a partnership on May 28, 1943," but that, "There is one certainty, and that is that it was not this plaintiff limited partnership composed of one general and five limited partners."

The evidence tended to show that the defendant had knowledge only that it was dealing with a partnership, not a particular kind of partnership. But it is in no position to complain that it had no knowledge that this

particular limited partnership was to be formed. The fact that the plaintiff is a limited partnership instead of a general partnership in no way affects the defendant's rights or obligations. In this connection it may be stated that Allan J. Kayser is a general partner, and the only one, and is general manager, and if defendant was in any way depending upon his personal skill, experience or responsibility it still has that and had it throughout the entire period.

Is then plaintiff the real party in interest and entitled to sue in its name, notwithstanding the fact that its name does not appear in the order and no assignment thereof was made to it?

Under the strict rules of the common law doubtless defendant's point would be well taken, but it is the purpose of the modern rules of procedure not only to relax those rules, but to require that suits be brought in the name of the real party in interest. *Gates v. Hepp*, 95 Colo. 285, 35 P. (2d) 857. Under the facts of this case plaintiff was not only the one beneficially interested in the contract, but contributed the consideration forming the basis of the suit. There is no doubt but that it is the real party in interest; furthermore, the testimony of Kayser himself, that the partnership is the only one beneficially interested in the claim forming the basis of this suit, is sufficient protection to the defendant against any possible claim in the future by Kayser based upon the same cause of action.

■ 3. We pass now to the third point, that defendant should have been given credit for the net loss which the plaintiff would have suffered had it fully performed the contract. This claim is based solely upon a statement made by E. J. Wells, a member of the defendant limited partnership. In his deposition which was taken on written interrogatories, a question and answer are as follows:

"Q. Basing your opinion on your inspection of the turret lathe equipment in this plant upon the record of

performance or attempted performance in machining these fittings on this order to which I have referred, and your inspection and knowledge of the mechanical workings of this multiple spindle machine, can you say whether it would have been possible to have machined 25,000 AN-822-10-NS fittings, or 10,000 AN-825-6-NS fittings on any or all of this equipment at any time between the time this 25,000 order was given to Mr. Kayser on May 28, 1943, and the time you were in Denver in May, 1944?

"A. I can very definitely say it would not have been possible to have machined either one of those orders with that equipment during that time or regardless of time. If we had delivered 10,000 forgings to Mr. Kayser to try to machine, either on those two old turret lathes or on his multiple spindle machine and charged him up with the spoilage on the forgings, *he would have lost money at five times the agreed price stated in the orders* and we would have undoubtedly lost most of our forgings, regardless of any time limit. I am basing this opinion on the quality and quantity of work he did on the 833-6-NS fittings and his rate of output on that order and upon my opinion that it would have been entirely impractical and impossible for him to have machined those fittings on his multiple spindle machine."

Nowhere in the five defenses pleaded by defendant does there appear any allegation that the plaintiff would have suffered a net loss had the contract been fully performed. The statement italicized in the above answer was not responsive to the question asked but was a mere voluntary chance remark, apparently thrown in by the witness to emphasize his evidence that the plaintiff's equipment was not adequate to do the job. It is the only place in the entire testimony that this point is mentioned, and its significance should not be over-emphasized. It is very apparent from the record that defendant made no serious attempt to prove this contention.

Defendant admits that it has the burden of proving

that a loss would have occurred, and this casual, ill-considered remark, couched in what is very apparently extravagant language, cannot be considered as sustaining that burden. The trial court was therefore right in refusing to submit that issue to the jury.

The evidence showed that the plaintiff made some use of the equipment and later sold part of it. Instruction 11 properly required the jury to give defendant credit for all such benefits.

■ The questions as to whether or not the contract was made with the plaintiff or with Allan J. Kayser as an individual; whether the defendant knew of the existence of the partnership of Allan J. Kayser and thereafter continued to deal with it as such; whether the plaintiff had advanced the moneys sued for; whether it would benefit directly by the successful prosecution of the action; whether the plaintiff was induced to make the expenditures by the giving of the contract; whether the fittings were to be manufactured on a special machine; whether the plaintiff could have manufactured the fittings to meet the necessary specifications within a reasonable time if the defendant had furnished the raw castings as agreed; and whether the defendant cancelled the order without justification, were all submitted to the jury under proper instructions and the verdict necessarily involved the finding on all of those issues in favor of plaintiff.

No error is disclosed in the record. The judgment is affirmed.

*On Rehearing.*

PER CURIAM.

After granting the petition for rehearing herein on point one discussed in this opinion, we again have carefully examined and considered the record, briefs and ar-

guments of counsel for the respective parties. Resultantly, we have added to, and modified our opinion in some minor respects and, after incorporating the changes therein—which in no way alters our views of the law in the case—we adhere to the original opinion, as modified.