565 P.2d 976 (1977)
G. L. WICKLAND, Plaintiff-Appellee and Cross-Appellant,
Buffalo Oil Corporation, Plaintiff,
v.
Jim SNYDER, d/b/a Jim Snyder Drilling Company, Defendant and Third-Party Plaintiff-Appellant and Cross-Appellee,
v.
Cecil J. OSBORNE, Third-Party Defendant.
No. 76-484.
Colorado Court of Appeals, Div. II.
June 9, 1977.
*977 Welborn, Dufford, Cook & Brown, Philip J. Dufford, Beverly J. Quail, Denver, for plaintiff-appellee and cross-appellant.
Davis, Graham & Stubbs, Donald E. Phillipson, Brian T. Dolan, Denver, for defendant and third-party plaintiff-appellant and cross-appellee.
ENOCH, Judge.
Defendant, Jim Snyder, appeals a judgment of $75,000 for breach of contract entered against him and in favor of plaintiff G. L. Wickland. We affirm.
The action arose as a result of the mislocation of two oil and gas wells which defendant contracted to drill for plaintiff. Plaintiff had an oil and gas lease covering several contiguous 40-acre tracts in Weld County where the wells were to have been drilled.
Well No. 1 was completed in January 1974 at a contract price of $27,240. This well produced both oil and gas, but was completed as a shut-in gas well primarily because of a lack of pipeline facilities. Well No. 2 was completed in June 1974, at a contract price of $27,180. This well was a dry hole.
In September 1974 another leaseowner in the area informed plaintiff that well No. 1 might be in the wrong location. A resurvey by defendant's surveyor completed in October 1974 revealed that the wells were apparently mislocated, and plaintiff's own survey, completed in March 1975, confirmed that both wells were several hundred feet west of their intended location. Well No. 1 was in fact on an adjacent lessee's acreage, and well No. 2, while still on plaintiff's lease, was on a different 40-acre tract than that designated in the contract. Plaintiff was able to secure rights to the production of well No. 1, by granting the lessee of that acreage a 12½ overriding royalty.
A summary judgment as to liability was entered in plaintiff's favor and the issue of damages was tried to the court.
Defendant agrees that the trial court was correct in measuring the damages by the cost of drilling the wells in the proper location, see Landauer v. Huey, 143 Colo. 76, 352 P.2d 302, less the value of benefits received by plaintiff as a result of the holes drilled in the wrong locations. See Wells Aircraft Parts Co. v. Allan J. Kayser Co., 118 Colo. 197, 194 P.2d 326. Defendant contends on appeal, however, that the court used the wrong time period in determining the cost of drilling and incorrectly determined the value of the benefits received by plaintiff.
Defendant asserts that in ascertaining damages the trial court should have used the cost of drilling each well at the time performance was due or at the time the breach was discoverable, so that plaintiff could have obtained substitute performance.
We conclude that defendant has failed to preserve this issue for appeal. As to the issue of the cost of drilling, the only relevant grounds asserted at trial by defendant's then counsel was a general statement that the damages were excessive and contrary to the law and evidence. No memorandum brief specifically addressing the cost of drilling accompanied the motion for new trial. The case was tried by both sides as if costs of drilling were to be measured as of the time of trial. The only suggestion that a different time should be used was a brief comment by defendant's trial attorney and by the third-party defendant's (surveyor's) attorney during closing arguments that the costs should be the approximately $27,000 paid for the wells at the time they were drilled, rather than the cost at trial, which was found to be $40,000 per well.
A matter which has not been raised or considered in the trial court will not be *978 ruled upon on review even if it may be applicable. Denver v. Miller, 151 Colo. 444, 379 P.2d 169. A change in the theory as to the measure of damages is one of the matters to which this rule applies. See Lexington Colorado Auto Co. v. Grigsby, 76 Colo. 328, 231 P. 160.
Also, a judgment will generally not be reversed because the trial judge adopted a wrong reason in reaching a conclusion which might be correct. Fleming v. Wells, 45 Colo. 255, 101 P. 66. See Klipfel v. Neill, 30 Colo.App. 428, 494 P.2d 115. The valuation of drilling costs here would be supportable under the evidence currently in the record, even if the measure of damages now advocated was applied in this case. Therefore, we decline to review this issue further. See Walker v. Casto, 150 Colo. 332, 372 P.2d 438.
Both parties contest the amount of benefits found by the court to have accrued to plaintiff as a result of defendant's drilling in the wrong place. The court estimated these benefits at approximately $8,760.
Defendant contends that plaintiff accepted the benefit of both wells, and that the measure of the benefit received is the reasonable value of the services rendered by defendant, or approximately $27,000 per well. The correct measure of value, however, is the value to the person benefitted, and the contractual rate, while some evidence of the value of the benefit, is not conclusive. Nordin Construction Co. v. City of Nome, 489 P.2d 455 (Alaska). Also making the best of a bad situation does not necessarily signify retention of the benefit. Nordin Construction Co., supra.
Rather than being an attempt to acquire a costless bargain, see Leoffler v. Wilcox, 132 Colo. 449, 289 P.2d 902, the lease procured by plaintiff from the true lessee for well No. 1 was a reasonable effort to mitigate damages. Plaintiff had spent almost $57,000 above the cost of drilling to complete the well after it was drilled and before learning of the error in location. In order to protect this expenditure, plaintiff had to grant the 12½ overriding royalty to the original lessee. Even if this well should eventually be productive, plaintiff will receive substantially less total revenue than from a comparable well on his original lease.
Although we recognize that it is not presently known whether a well in the proper location would have been superior or inferior to the well actually drilled, still the increased burden of the override was a proper factor for the court to consider in determining the net benefit from well No. 1 accruing to plaintiff. The burden was on defendant to show the value of the benefit, Nordin Construction Co., supra, and there was only minimal evidence by defendant to show the value of well No. 1 as a producing well. Therefore we cannot say that the court erroneously undervalued the benefit received.
Plaintiff received no benefit from well No. 2, except for the geologic information derived therefrom. Since this well was not in the proper location, the contract price again is not conclusive as to the value of the benefit received by plaintiff.
Defendant asserts that even if the information received from the wells actually drilled is the measure of value of the benefit, the court's valuation of that benefit was inadequate. However, the evidence on this issue was conflicting. Plaintiff admitted in his motion for new trial that if well No. 1, when completed in the correct location, turned out to be a dry hole, then lessees of tracts adjacent to plaintiff's had agreed to pay $5,000 each in "dry hole" contributions, or payments for drilling costs, in exchange for access to the geologic information derived therefrom. Plaintiff testified, however, that he did not enter any reciprocal agreements to pay adjacent lessees such contributions for wells drilled on their lands, and that such information was available to him from a petroleum information service for $30 per month.
Defendant also contends that he was not able to present adequately evidence of the value of the information received from the improperly located wells because of surprise *979 caused by plaintiff Wickland's negative answer to the following question: "Going to well No. 1 again, did you have any dry hole support?" No objection or expression of surprise was made at the time of this answer, and the evidence sought could have been elicited by the exercise of ordinary diligence by further cross-examination or by production of documentary evidence, known to defendant, showing the dry hole contracts; hence, there was no error in denying defendant's motion for new trial on the grounds of surprise. Schlessman v. Brainard, 104 Colo. 514, 92 P.2d 749. Furthermore, the answer was correct as given to the extent that plaintiff had received no dry hole payments on well No. 1, since it was in the wrong location, and since it was not a dry hole.
The court recognized that plaintiff received a benefit from having a "shut-in" gas well, though on the wrong lease, and from receiving geologic information from the holes that were actually drilled. In the face of the conflicting evidence as to the value of the informational benefits received, and the minimal evidence as to the net value to plaintiff of the shut-in gas well, the benefit allowance awarded here was not manifestly erroneous and will therefore not be disturbed on review. Board of County Commissioners v. Wilcox, 35 Colo.App. 215, 533 P.2d 50.
Defendant next argues that it was error to award plaintiff $3,161, the cost of renewal of plaintiff's original lease after it was discovered that well No. 1 was not on the leased acreage. However, no objection to this item of damages was asserted during trial, nor was it specifically raised in defendant's motion for new trial. Therefore, the issue has not been preserved for review. Howard v. Interstate Development Co., 29 Colo.App. 287, 483 P.2d 1366.
Plaintiff, in his cross-appeal, asserts that the court erred in disallowing $4,839 paid to his lessor for surface damage. The lessor required payment of this amount as a condition to renewing the lease after it had lapsed. However, plaintiff was obligated to pay for surface damage above $200 under the original lease in any event. The fact that the lessor made payment of this existing obligation a condition precedent to renewal of the lease does not transform this payment into consideration for the lease renewal. See Benford v. Yockey, 63 Colo. 96, 164 P. 725.
We also find no error in the court's conclusion that the plaintiff failed to establish his damages for loss of an option to obtain drilling rights in another lease, which rights were contingent upon well No. 2 being drilled in the proper place, and for the value of plaintiff's time spent in renewing his original lease after it expired. Additionally, we find defendant's appeal not to be frivolous, and therefore deny plaintiff's claim pursuant to C.A.R. 38, for damages and double costs.
Judgment affirmed.
RULAND and BERMAN, JJ., concur.