The **PEOPLE** of the State of Colorado, Petitioner-Appellee,

In the Interest of C.A.J., a child,

and concerning, E.J., Respondent-Appellant.

No. 84CA1351.

Colorado Court of Appeals, Div. I.

Sept. 26, 1985.

Rehearing Denied Oct. 31, 1985.

Stephen H. Kaplan, City Atty., Robert Lubowitz, Asst. City Atty., Denver, for petitioner-appellee.

J. Patrick McCahill, Denver, Guardian Ad Litem.

James E. Hautzinger, Denver, for respondent-appellant.

ENOCH, Chief Judge.

E.J. (father) appeals from a trial court judgment terminating his parental relationship with his child, C.A.J. We affirm.

Three days after the child was born, her mother, an Alaskan Indian, voluntarily placed her with the Denver Department of Social Services (Department). Mother then left the Denver area and her whereabouts are unknown. She has had no further contact with the child or authorities. Father was not aware of the child's birth until the child was almost a month old. Shortly thereafter, he requested parental custody from the Department.

The Department filed a dependency or neglect petition under § 19-1-103, C.R.S. (1978 Repl.Vol. 8), which the court granted. The court then approved a treatment plan for father, which it later modified. Fourteen months later, the Department filed a motion to terminate both parents' parent-child relationship, after which father's treatment plan was again modified two more times. The court also ordered a psychological/psychiatric reevaluation of father and required that father participate in a parent-child interaction study.

A week before the termination hearing was scheduled, father filed a motion opposing termination and a motion for an alternative treatment plan, under which he would have received temporary custody of

the child. The court denied his motions and ordered that his parent-child relationship be terminated. The parent-child relationship as to the child's mother was terminated through an entry of default judgment. The court, however, stayed its order pending this appeal.

Father contends on appeal that the Department did not meet the burden of proof required to terminate his parent-child relationship. We disagree.

■ Clear and convincing evidence is the constitutional standard of proof required in termination cases under § 19–11–101, et seq., C.R.S. (1978 Repl. Vol. 8). *People in Interest of A.M.D,* 648 P.2d 625 (Colo. 1982). Here, however, because the child's native American status was verified by the Bureau of Indian Affairs, the court was correct in applying the provisions of the Federal Indian Child Welfare Act (Act) 25 U.S.C. § 1901, et seq., which, in termination cases, requires proof *beyond a reasonable doubt* that continued custody of the child is likely to result in serious emotional or physical damage to the child. *In re J.L.H.,* 299 N.W.2d 812 (S.D.1980). *See also A.B.M. v. M.H. & A.H.,* 651 P.2d 1170 (Alaska 1982); 25 U.S.C. §§ 1901 and 1903.

■ Here, the trial court entered an order which contained extensive and thorough findings of fact, all of which are amply supported by the record. The evidence, which included significant expert testimony, established that the child is a "special needs child," with language problems and marginal development in other crucial areas, that she is emotionally and physically fragile, withdrawn and inhibited, and that she has dietary problems, all of which require close monitoring and supervision. The evidence was uncontroverted that the child needs special education, placement in a developmental pre-school, and constant attention at home. The experts' opinion was that if her future environmental conditions were inadequate, she would not develop properly, but would encounter serious physical and emotional problems.

The evidence further established that father lives a "nomadic lifestyle." Every witness who had contact with him described a long history of missed appointments and failure to follow court-appointed instructions. The record also contains extensive testimony that reasonable efforts by child care agencies had been made to help him successfully complete the various court-approved treatment plans. Nevertheless, he failed to obtain a suitable residence, did not inform the Department of his whereabouts, failed to obtain a psychiatric examination, and thus demonstrated an inability and unwillingness to comply with the plans. The evidence established beyond a reasonable doubt that father could not provide the child with the special care needed, and that she would experience serious emotional or physical damage if he were given custody. Thus, the court was correct in terminating father's parental rights under the Act.

■ The evidence also established, by clear and convincing evidence, the criteria for termination of the parent-child relationship under § 19–11–101, et seq., C.R.S. (1978 Repl.Vol. 8).

■ We find no merit in father's contention that the Department's motion for termination of the parent-child relationship failed to give proper notice because it did not set forth factual grounds for termination, but merely recited the language of § 19–11–105, C.R.S. (1978 Repl.Vol. 8). *People in Interest of M.H.,* 683 P.2d 807 (Colo.App.1984) is dispositive of this contention.

■ Because it was not raised as an issue in the trial court, we do not address father's contention that the Act precluded mother from placing the child in a foster home within 10 days of the child's birth. *See Wickland v. Snyder,* 39 Colo.App. 403, 565 P.2d 976 (1977).

Judgment affirmed.

SMITH and METZGER, JJ., concur.