Gerald SCHMIDT, Jerry Hagen, Alice Hagen, Ray Weber, Irvin Nauman, Robert W. Wenande, and TLI, Inc., a Colorado Corporation, Plaintiffs-Appellants,

v.

Susan K. FRANKEWICH, Esq., John M. Palmeri, Esq., Jones, Jones, Close & Brown, a chartered corporation of the State of Nevada, and White and Steele, a professional corporation of the State of Colorado, Defendants-Appellees.

No. 89CA1501.

Colorado Court of Appeals,
Div. I.

June 6, 1991.

Rehearing Denied July 5, 1991.

Certiorari Denied Oct. 28, 1991.

Podoll & Podoll, P.C., Richard B. Podoll, Denver, for plaintiffs-appellants.

Wood, Ris and Hames, P.C., Eugene S. Hames, Kathleen O. Nistico, Denver, for defendants-appellees White & Steele, P.C. and John M. Palmeri.

Hall & Evans, Paul R. Franke III, Ronald B. Taylor, Denver, for defendant-appellee Jones, Jones, Close & Brown.

Faegre & Benson, Michael S. McCarthy, Russell O. Stewart, Donald A. Burkhardt, Denver, for defendant-appellee Susan K. Frankewich.

Opinion by Judge TURSI.

In this attorney malpractice action, plaintiffs, TLI, Inc., and its individual shareholders, appeal a summary judgment in which the trial court dismissed their contract and tort claims as being barred by the doctrine of collateral estoppel. The individual shareholders additionally appeal the trial court's dismissal of their third-party beneficiary claim, and plaintiff Alice Hagen appeals the award of attorney fees assessed against her without an evidentiary hearing. We affirm.

*The Bankruptcy and Guaranty Actions*

TLI, Inc., borrowed $3.9 million from a savings and loan institution (Citizens) for the purpose of constructing a motel. TLI executed a promissory note and deed of trust in favor of Citizens, and TLI's individual shareholders were required to guarantee TLI's payment of the loan.

After the motel was built, TLI retained defendant Jones, Jones, Close and Brown, a Nevada law firm, and its associate, Susan Frankewich, to file Chapter 11 bankruptcy proceedings on the corporation's behalf in the bankruptcy court for the District of Colorado. Frankewich then retained the services of defendants White and Steele and its associate, John Palmeri, to assist in the TLI proceeding as local counsel.

TLI's petition for Chapter 11 was filed in the spring of 1986. Shortly thereafter, owing to TLI's default on the underlying loan, Citizens filed suit in Jefferson County District Court against the individual shareholders to collect on the personal guaranties (the Citizens guaranty suit).

Citizens served the individual plaintiffs with process during a meeting on June 13, 1986, which had been convened for the purpose of discussing how to defend against the Citizens suit. It was agreed in that meeting that Robert Updike, the individual shareholder who had retained defendants to represent TLI in the bankruptcy proceeding, would retain counsel to defend the individual shareholders in the Citizens suit. Updike forwarded the Citizens guaranty summonses and complaints which had been served on the individual shareholders to Frankewich and believed, as a result of subsequent discussions with Frankewich, that the interests of the individuals were being represented by defendants.

On June 26, 1986, defendants attempted to prohibit the Citizens guaranty suit from proceeding against guaranties of the individual shareholders by filing in the bankruptcy court a motion to enjoin such proceedings or alternatively to extend the automatic stay to them as guarantors. However, the motion was denied without prejudice four days later because it was procedurally defective.

Defendants did not file the proper pleading with the bankruptcy court for approximately two and one-half months. Responsive pleadings in the Citizens suit were not filed on behalf of the individual guarantors, and default judgment entered against them and in favor of Citizens on August 26, 1986.

The individual shareholders subsequently filed various C.R.C.P. 55 and 60(b) motions to set aside the default judgment in the Citizens guaranty suit. They alleged that Frankewich had instructed TLI's corporate counsel not to file an answer on behalf of the individual shareholders in the Citizens guaranty suit because she was representing and protecting their interests, stating that she "had everything under control." The motions were predicated in part upon the individual shareholders' alleged excusable neglect of relying upon Updike to retain counsel in their behalf. In addition, certain of the shareholders argued that, since they believed defendants had undertaken representation of their individual interests, excusable neglect relieved them from default judgment.

The trial court convened two hearings on the motions during which it heard oral argument. At the end of each hearing, the court ruled that the individual shareholders had not established excusable neglect when they relied upon a co-investor to retain counsel.

The trial court expressly stated that the individual shareholders "apparently relied on a co-investor to take care of these things. [They] apparently did not consult an attorney; or if [they] did, nothing was done as a result of that. But in any event, I can't possibly find that there's any excusable neglect which would justify this Court's setting aside the judgment." It also found that no attorneys had entered an appearance on behalf of the individuals and that the individuals had relied upon the bankruptcy attorneys to stay the guaranty suit in lieu of filing an answer. Consequently, the court declined to vacate the default judgments.

On appeal, this court affirmed the trial court's order, holding (a) that litigation in a different court, even on a related matter is not an appearance for purposes of C.R.C.P. 53(b)(2), and (b) that reliance upon a third person to retain counsel does not constitute excusable neglect. Significantly, this court also held that "the record does not support the argument that Updike believed attorneys were handling the matter and representing defendants personally." *See Citizens Federal Savings & Loan Ass'n v. Schmidt* (Colo.App. No. 87CA0027, April 14, 1988) (not selected for official publication).

### The Attorney Malpractice Action

On July 1, 1988, plaintiffs filed this action in Denver District Court, alleging that defendants' performance of their professional duties caused damages to the corporation, its individual shareholders, and Alice Hagen.

Defendant Frankewich, by motion, requested either dismissal or summary judgment as to all claims. Defendants White and Steele and Palmeri also filed motions for summary judgment seeking dismissal of all claims asserted by TLI and the individual guarantors.

Concluding that the doctrine of collateral estoppel applied to preclude plaintiffs' claims, coupled with the determination that third-party beneficiary claims were unavailable to the individual shareholders as a matter of law, the trial court, on July 25, 1989, granted Frankewich's motion and ordered dismissal of all claims. The court entered a separate order in which it held that consideration of the motions for summary judgment by defendants White and Steele and Palmeri was moot, given its disposition of Frankewich's motion.

### I.

Plaintiffs contend that the trial court committed error when it held that the individual shareholders were collaterally estopped from relitigating the issue whether an attorney-client relationship exists between the individual shareholders and de-fendants in the Citizens guaranty suit. We disagree.

The doctrine of collateral estoppel prohibits parties from relitigating issues which have previously been litigated so long as certain criteria are met, including the requirement that the issue precluded is identical to an issue actually and necessarily determined in the prior proceeding. *Bennett College v. United Bank*, 799 P.2d 364 (Colo.1990).

Here, plaintiffs argue that the issue litigated in the Citizens guaranty suit is not identical to the pending issue—whether an attorney-client relationship existed between the individual plaintiffs and defendants. However, we conclude that, although there is no express finding addressing the issue of the alleged attorney-client relationship, the issue in this case was actually litigated in the previous action.

The existence of an attorney-client relationship is based upon contract, which may be implied from conduct of the parties. *People v. Razatos*, 636 P.2d 666 (Colo. 1981). However, irrespective of whether such a relationship is express or implied, the parties must agree upon all essential contractual terms whether such a relationship is express or implied. *I.M.A., Inc. v. Rocky Mountain Airways, Inc.*, 713 P.2d 882 (Colo.1986); *see* Restatement (Second) of Contracts § 17(1) (1981).

Agreement to essential contractual terms is evidenced by the parties' manifestations of mutual assent. *I.M.A., Inc. v. Rocky Mountain Airways, Inc., supra.* If the parties fail to agree to sufficiently definite and certain terms, there is no meeting of the minds and, hence, no valid contract. *Sunshine v. M.R. Mansfield Realty, Inc.*, 195 Colo. 95, 575 P.2d 847 (1978).

When reaching its determination that excusable neglect was not justified, the Citizens guaranty trial court expressly found that the individual plaintiffs relied upon co-investor Updike to retain counsel to represent their individual interests. This court, in affirming the trial court's findings, held that Updike did not believe that defendants

were representing the individual guarantors personally.

These findings establish that neither party agreed or assented to the terms of defendants' alleged representation of the individuals. Therefore, the trial court implicitly concluded that a contract between the parties could not be established, and this finding was subsumed in the previous finding of no excusable neglect. *See Reitler v. Olson,* 68 Colo. 65, 187 P. 313 (1920).

Accordingly, the trial court correctly dismissed the individual plaintiffs' claims when it found that they were collaterally estopped from relitigating the issue of attorney-client relationship. *Bennett College v. United Bank, supra.*

## II.

■ Plaintiffs next contend that the trial court committed error when it dismissed TLI's tort and contract claims based upon the doctrine of collateral estoppel. Although we agree that TLI is not collaterally estopped from litigating its claims, the trial court's order of dismissal is affirmed. TLI fails to state a claim as a matter of law. *See Cole v. Hotz,* 758 P.2d 679 (Colo. App.1987).

In its complaint, TLI alleges that it suffered direct injury as a result of defendants' failure to protect TLI's shareholders from the Citizens guaranty suit.

TLI alleges that its damages flow from defendants' dual failure to file a proper adversary pleading in bankruptcy court on the individuals' behalf or to undertake any action in the Citizens guaranty suit. These omissions allegedly caused entry of default judgment and the foreclosure which, in turn, resulted in TLI's loss of opportunity to reorganize and to benefit from prospective economic gains.

■ A review of the pleadings establishes that the damages claimed by TLI are derivative of the damages directly sustained by its shareholders. TLI cannot recover separately for harm indirectly suffered as a result of harm accruing to the individual guarantors. *See Box v. Roberts,* 112 Colo. 234, 148 P.2d 810 (1944).

■ TLI, nevertheless, contends that it has or will sustain independent damages since it is obligated to indemnify its shareholders for their losses incurred on behalf of the corporation. However, TLI did not make this allegation nor submit supporting evidence to the trial court until its motion for reconsideration, subsequent to the order granting Frankewich's motion for summary judgment. This evidence, therefore, could not properly be considered by the trial court, *see Conrad v. Imatani,* 724 P.2d 89 (Colo.App.1986), and we will not consider it upon review. *Wickland v. Snyder,* 39 Colo.App. 403, 565 P.2d 976 (1977).

■ Moreover, TLI failed to plead and produce any evidence tending to show that it sustained damages which were caused by defendants' breaches.

In light of the determination that defendants did not undertake representation of the individuals' interests, TLI was obligated to present evidence tending to establish that the defendants breached a contractual duty owed to TLI in the bankruptcy proceeding which resulted in the foreclosure. *See Overland Development Co. v. Marston Slopes Development Co.,* 773 P.2d 1112 (Colo.App.1989). Additionally, TLI was required to produce evidence in support of its contention that defendants' negligent breach of professional duties proximately caused their alleged injuries. *See Aurora v. Loveless,* 639 P.2d 1061 (Colo. 1981).

Inasmuch as Citizens had an unrefuted entitlement to foreclose upon and sell TLI's property, TLI failed to sustain its burden. There is no genuine issue of disputed material fact regarding causation of the foreclosure and TLI's other claimed damages. Therefore, TLI's failure to produce any evidence of causation is fatal. Accordingly, summary judgment was proper. C.R.C.P. 56.

## III.

The next error with which the trial court is charged is its dismissal of plaintiffs' third-party beneficiary claim. We agree that this claim was properly dismissed.

■ Plaintiffs contend that the scope of TLI's undisputed attorney-client relationship with defendants included the understanding that defendants would represent the individual shareholders as clients in the Citizens guaranty case. Consequently, they argue that the individual shareholders were direct and intended beneficiaries of TLI's contract and that defendants breached their duties thereto. However, we conclude that *Weigel v. Hardesty*, 37 Colo. App. 541, 549 P.2d 1335 (1976) and its progeny are dispositive of plaintiffs' third-party beneficiary claim.

In *Weigel*, and most recently, in *McGee v. Hyatt Legal Services*, 813 P.2d 754 (Colo.App.1990), the court held that an attorney is liable to a third party for damages only upon a showing that, while fulfilling his fiduciary duty to act in his client's best interests, the attorney acted fraudulently or maliciously. We do not perceive any reason to extend an attorney's liability beyond the stated rule to include third-party beneficiary situations.

We recently held that attorneys' liability to non-clients should be limited for the following reasons: (1) the attorney's duty of loyalty and effective advocacy for his client; (2) the nature of the adversarial relationship between an attorney and other parties; and (3) the potential liability to an unlimited number of third parties if attorney liability to third parties is extended. *Montano v. Land Title Guarantee Co.*, 778 P.2d 328 (Colo.App.1989).

■ Of course, although the foregoing reasons underscore the necessary policy of limiting an attorney's liability to third-party beneficiaries, this policy does not prohibit parties from establishing a *direct* express or implied contract of representation with an attorney which, upon its breach, may result in the imposition of liability. *See People v. Razatos, supra* (attorney-client relationship may be established impliedly or expressly); *and Coon v. Ginsberg*, 32 Colo.App. 206, 509 P.2d 1293 (1973) (attorney's breach of employment contract with client may result in imposition of liability).

■ And, in situations in which an attorney is found to have improperly under-taken the representation of multiple clients with conflicting or adverse interests, the attorney may also be found to have breached his ethical obligations. *See People v. McDowell*, 718 P.2d 541 (Colo.1986).

Here, the trial court concluded that because it could not discern any evidence of fraudulent or malicious conduct on the part of the defendants, they could not be held liable for duties exceeding those owed to their clients. There is no genuine issue of material fact as to the existence of fraudulent or malicious conduct. We therefore affirm the trial court's order dismissing plaintiffs' third-party beneficiary claim. *See Montano v. Land Title Guarantee Co., supra.*

### IV.

■ Plaintiffs finally contend that the trial court erred when, upon its dismissal of Alice Hagen's claims, it determined that the claims lacked substantial justification, entitling defendants to an award of attorney fees pursuant to § 13–17–102, C.R.S. (1987 Repl.Vol. 6A).

In its July 25, 1989, order of dismissal, the trial court improperly determined that Hagen's claims lacked substantial justification and assessed reasonable attorney fees against her without first conducting the requisite evidentiary hearing. *See Pedlow v. Stamp*, 776 P.2d 382 (Colo.1989).

Ordinarily we would reverse such an order and remand the cause for an evidentiary hearing on the matter pursuant to *Pedlow*. Here, however, the erroneous order was amended by court order dated September 26, 1989, in which it determined that Hagen's claims "may have lacked substantial justification." The court then directed the matter to be set for a hearing on the issue of attorney fees.

Accordingly, so long as upon remand the issue of attorney fees is determined after an evidentiary hearing is conducted pursuant to the requirements set forth in *Pedlow* and § 13–17–102, we will not reverse the challenged order.

The judgment is affirmed and the cause is remanded for further proceedings.

PIERCE and PLANK, JJ., concur.