837 P.2d 284 (1992)
The PEOPLE of the State of Colorado, Petitioner-Appellee,
In the Interest of E.H. and S.W., Children, and Concerning B.W. n/k/a B.S., Respondent-Appellant,
and R.H., Respondent-Appellee.
No. 91CA0448.
Colorado Court of Appeals, Div. I.
May 21, 1992.
Rehearing Denied June 18, 1992.
Certiorari Denied October 13, 1992.
*286 Michael J. Schingle, Fort Morgan, for petitioner-appellee.
Edgar H. Brandenburg, Brush, guardian ad litem.
Eric C. Jorgenson, Fort Morgan, for respondent-appellant.
Douglas R. Asmus, Yuma, for respondent-appellee.
Opinion by Judge HUME.
B.W. (mother) appeals from a judgment of the trial court terminating her parent-child legal relationship with her daughter S.W. She also appeals an order of the juvenile court modifying a previous order vesting custody of another daughter, E.H., in that child's father, R.H. We dismiss the contentions raised as to the adjudicatory decree, affirm the judgment of termination, and affirm the order modifying custody.
Following a jury trial in November 1988, both children were adjudicated dependent and neglected. These adjudications were appealed to this court and affirmed in People in Interest of E.H., (Colo.App. No. 89CA1308, June 28, 1990) (not selected for publication). On April 20, 1990, the trial court adopted a separate permanency plan for each daughter pursuant to § 19-3-702, C.R.S. (1991 Cum.Supp.).
On June 1, 1990, the department of social services filed a motion to terminate the parent-child legal relationship between S.W. and her parents, F.W. and B.W. F.W. relinquished his parental rights to S.W. before the termination hearing and was dismissed from the proceedings. After conducting a hearing, the trial court granted the motion to terminate the parent-child relationship between S.W. and mother.
Mother's marriage to R.H. had been dissolved prior to E.H.'s being adjudicated dependent and neglected. In the decree of *287 dissolution, mother had been granted sole custody of E.H. During the pendency of the dependency and neglect action, R.H. filed a verified motion seeking to change E.H.'s custody to him. The juvenile court granted the motion.
Mother appeals both the judgment terminating her parent-child relationship with S.W. and the order granting the change of custody of E.H.

I.

Termination Issues  S.W.

A.
Mother initially contends that there was no valid adjudication of S.W.'s status as dependent or neglected as to mother and the trial court therefore erred in finding that the criteria in § 19-3-604(1)(c), C.R.S. (1991 Cum.Supp.) were met. She argues that the jury's determination of dependency and neglect was limited to the status of S.W. as related to her father and that the jury never found that S.W. was dependent and neglected while she was in mother's sole care.
Mother's attempt to argue here the substantive merits of the adjudication of dependency and neglect is not timely, and therefore, the appeal will be dismissed as to such issues. See People in Interest of E.A., 638 P.2d 278 (Colo.1981); People in Interest of B.M., 738 P.2d 45 (Colo.App. 1987); C.A.R. 4(a). Such matters should have been raised in the appeal of the adjudication decrees in People in Interest of E.H., supra.
Mother's reliance on People in Interest of K.S., 33 Colo.App. 72, 515 P.2d 130 (1973) is misplaced. Here, unlike that situation, termination did not occur at the dispositional hearing. Rather, a separate termination hearing followed the implementation of an appropriate treatment plan designed to address mother's parenting deficiencies.

B.
Mother also contends that the trial court erred in denying her motion for post-trial relief filed pursuant to C.R.C.P. 59. She argues that the trial court should have granted a new trial because procedural irregularities prevented her from receiving a fair trial and because newly discovered evidence would probably change the outcome of the termination hearing. We find no merit in these arguments.
After having been granted legal custody of S.W. in the dependency and neglect proceedings, the Morgan County Department of Social Services (Department) placed S.W. in foster care in Morgan County. Subsequently, S.W.'s foster parents requested that the Department remove her from their home at a time when no other foster care placements were available in Morgan County. Consequently, S.W. was placed in a foster-adopt home in Weld County.
In the permanency plan adopted by the trial court April 20, 1990, the Department stated its intention to file a motion to terminate the parent-child relationship between mother and S.W. The permanency plan required the Department to file a report with the trial court at least 15 days prior to the termination hearing stating the foster parents' decision concerning adoption. On May 12, 1990, the foster parents executed a declaration indicating their intent to adopt S.W., as was then required by Colo.Sess. Laws 1988, ch. 139, § 19-3-611(9)(a) at 757 (subsequently repealed, effective June 5, 1991). The foster parents filed the declaration with the Department, and in late May, the Department filed it with the court. However, pursuant to the foster parents' request for privacy, the filing of the declaration and its contents were kept confidential. No notation was made in the registry of actions that the declaration had been filed and the information was not then made available to mother or her counsel.
At the beginning of the termination hearing, mother's counsel objected to the Department's failure to file the report required by the permanency plan. The trial court then informed mother's counsel that the declaration of intent to adopt had been filed May 23, 1990, as a suppressed item, not to be disclosed or released except upon order of the court.
*288 After entry of the termination order and a subsequent release order as to the declaration, mother filed a motion for new trial asserting that the suppressed filing was an irregularity in the proceedings and that the contents of the declaration made available to her by the post-termination release order constituted newly-discovered evidence.
Contrary to mother's contention, we conclude that the trial court properly denied the motion. We agree with the trial court that her failure to file a supporting affidavit could be grounds alone to justify denial of the motion. Aldrich v. District Court, 714 P.2d 1321 (Colo.1986). However, we also agree with the trial court's substantive disposition of the motion.
If a new trial is sought on the ground of newly discovered evidence, the moving party must prove that she could not have discovered the evidence in the exercise of reasonable diligence and produced it at trial; that the evidence was material to an issue before the court; and that the evidence, if admitted, would probably change the result of the trial. People in Interest of P.N., 663 P.2d 253 (Colo. 1983); E.M.F. v. N.N., 717 P.2d 961 (Colo. App.1985). We agree with the trial court that mother failed to establish these criteria.
Here, mother could have sought and obtained the desired information prior to the termination hearing through appropriate discovery or proceedings to enforce the permanency plan. Furthermore, mother knew on the morning of the termination hearing that the declaration had been filed, and her counsel could have questioned the caseworker about the declaration's contents during the course of cross-examination.
Mother also failed to establish that the evidence was material to an issue before the court. Under the statute as it then existed, the declaration served two purposes: to confer standing upon foster parents to contest or appeal any decision made by a regional foster care review board for removal of the child from the foster home, see Colo.Sess.Laws 1988, ch. 139, § 19-3-611(9)(a) and (9)(b), at 757; and to serve as a relevant factor to be considered during the permanency planning phase of a dependency or neglect case. See § 19-3-702, C.R.S. (1991 Cum.Supp.). Thus, a declaration had no direct relevance to the criteria for termination of a parent-child relationship. See § 19-3-604, C.R.S. (1991 Cum. Supp.).
As the trial court noted, at best, the declaration might have been used to attack the credibility of one caseworker's testimony. Consequently, we agree with the trial court that mother failed to prove the declaration was material to an issue before the court.
Finally, as the trial court also noted, the evidence adduced at the termination hearing showed that the Department favored termination, that it felt the child's interests would best be served by an adoptive placement, and that the child was adoptable at that time. The court stated it had considered these factors in weighing the testimony of the caseworker, and it concluded that the presentation of evidence of the contents of the declaration would not have resulted in a different ruling on the motion to terminate.
The discovery of new evidence which would only corroborate the evidence given at trial, or contradict or impeach it, does not warrant the grant of a new trial unless it appears there would be a different result. Phillips v. Monarch Recreation Corp., 668 P.2d 982 (Colo.App.1983).
Also, considerable discretion is vested in the trial court in ruling on a motion for new trial. Its ruling will not be disturbed in the absence of a clear showing of abuse of discretion. Aspen Skiing Co. v. Peer, 804 P.2d 166 (Colo.1991). We find no such abuse here.

C.
Mother next contends that the trial court abused its discretion in admitting the expert opinion testimony of a psychiatric nurse. She does not dispute the witness' qualifications as a psychiatric nurse, but argues that the trial court did not require *289 sufficient foundation for her opinions concerning mother's parenting deficits and the issue of termination. We disagree.
The sufficiency of the foundational evidence to establish the qualifications and knowledge of a witness to entitle her to express an opinion is a question for the trial court's determination, and in the absence of a showing of an abuse of that discretion, the trial court's ruling on such issue will not be overturned. People v. Jiminez, 187 Colo. 97, 528 P.2d 913 (1974); CRE 702.
Here, although the trial court initially allowed the witness to be qualified broadly as an expert in psychiatric nursing, it later required additional foundational testimony before allowing her to offer opinion testimony on issues surrounding the question of termination. The trial court concluded that the evidence demonstrated sufficient knowledge, skill, and particular work experience in the clinical setting to form impressions in areas of parent-child dynamics and to express opinions that would aid the fact-finder.
Given the foundation required by the trial court, we find no abuse of discretion in the admission of the expert's opinion testimony. We agree with the trial court that mother's objections go to the weight, not the admissibility, of the testimony.
Contrary to mother's argument, the trial court was not required sua sponte to call a specific examining physician to testify concerning the interactional evaluation simply because she had more experience than the psychiatric nurse. Pursuant to § 19-1-107(2), C.R.S. (1991 Cum.Supp.), the burden is on the party who desires the testimony of a particular witness to request an order from the trial court requiring the presence and testimony of that witness. Mother made no such request here.

D.
We reject mother's contention that the trial court erred in finding that the treatment plan adopted by the court was appropriate.
The purpose of a treatment plan is to preserve the parent-child relationship by helping the parent to remedy those problems which necessitated state intervention. People in Interest of C.R., 772 P.2d 672 (Colo.App.1989). An "appropriate treatment plan" is one reasonably calculated to render the particular parent fit to provide adequate parenting to the child within a reasonable time and which relates to the child's needs. Section 19-3-508(1)(e)(II), C.R.S. (1991 Cum.Supp.).
The appropriateness of a plan must be measured against the factors which led to the dependency and neglect adjudication and evaluated by its likelihood in reuniting the family. People in Interest of M.M., 726 P.2d 1108 (Colo.1986).
Here, the treatment plan was adopted when mother was married to F.W., S.W.'s father. Mother argues that, once her marriage to F.W. was dissolved, the treatment plan should have been amended to address only her problems, rather than the problems of the marital entity.
The trial court found that although a revised treatment plan following the dissolution of mother's marriage to F.W. might have been appropriate, the needs identified for mother and S.W. in the initial treatment plan were still the same, if not more pronounced, after dissolution of the marriage. As these findings are supported by the record, we find no merit in mother's contention.

E.
We also reject mother's contention that the trial court erred in finding, as required by § 19-3-604(1)(c)(III), C.R.S. (1991 Cum.Supp.), that her conduct or condition was unlikely to change within a reasonable time. This finding was supported by clear and convincing evidence, including mother's own testimony and that of her caseworker and the expert witnesses. Accordingly, it will not be disturbed on appeal. See People in Interest of A.J., 757 P.2d 1165 (Colo.App.1988).

*290 II.

Custody Issues  E.H.
Mother and R.H. are the natural parents of E.H. In their Phillips County dissolution of marriage action, sole custody of E.H. was awarded to mother. In late July 1988, R.H. filed a verified motion in the dissolution proceeding for change of custody of E.H.
Pursuant to C.R.J.P. 4.4(a), he also filed a motion to certify the custody issue to the Morgan County Juvenile Court (juvenile court) where the dependency and neglect action concerning E.H. and mother was then pending. The district court entered an order certifying the custody issue to the juvenile court. On February 25, 1991, the juvenile court held a hearing on the motion to modify custody and granted it.

A.
Mother contends that the juvenile court lacked jurisdiction to hear the motion to modify custody because the matter was not properly certified from the district court to the juvenile court. We find no merit to this contention.
Section 19-1-104, C.R.S. (1991 Cum. Supp.) provides, in pertinent part:
(4) Nothing in this section shall deprive the district court of jurisdiction ... to determine the legal custody of a child ... when the question of legal custody is incidental to the determination of a cause in the district court; except that:
(a) If a petition involving the same child is pending in juvenile court or if continuing jurisdiction has been previously acquired by the juvenile court, the district court shall certify the question of legal custody to the juvenile court....
C.R.J.P. 4.4(b) provides that when the custody issue is certified to the juvenile court, a copy of the order of certification shall be filed in the dependency or neglect case.
Here, mother admits that the district court ordered the certification of the custody issue to the juvenile court. However, she argues that because a copy of the order of certification was not filed in the juvenile dependency and neglect case, the certification process was incomplete and the juvenile court therefore lacked subject matter jurisdiction to hear the custody matter. We disagree.
Subject matter jurisdiction concerns the court's authority to deal with the class of cases in which it renders judgment. It is not sufficient that the court has, in the abstract, the authority to decide the particular class of case which is before it; its authority must be invoked before it can act. People in Interest of Clinton, 762 P.2d 1381 (Colo.1988).
In applying these principles to the requirement of certification in § 19-1-104(4)(a), we conclude that the certification process is complete when the transferring court has entered an order of certification and the receiving court acknowledges the existence of that order and exercises its authority over the proceedings to determine the certified issue.
Contrary to mother's arguments, the provisions of C.R.J.P. 4.4 are not subject matter jurisdictional requirements. Rather, C.R.J.P 4.4 is a procedural rule designed to regulate procedural operation and to allow courts to function efficiently. See J.T. v. O'Rourke, 651 P.2d 407 (Colo.1982); see also People v. McKenna, 196 Colo. 367, 585 P.2d 275 (1978). Therefore, failure to comply with the technical provisions of the rule did not deprive the court of subject matter jurisdiction to determine the custody matter.
Moreover, the right to insist upon compliance with such procedural rules must be exercised in a timely matter or the noncompliance may be waived. Cf. Motz v. Jammaron, 676 P.2d 1211 (Colo.App.1983). By failing to insist upon compliance with C.R.J.P. 4.4 prior to the hearing, mother waived the right to object to non-compliance with the rule.

B.
Mother contends that the trial court erred in allowing the testimony of a psychologist at the hearing. She argues *291 that his testimony was protected from disclosure by the attorney-client privilege. We reject this contention.
In the proceedings to terminate the parent-child relationship between mother and S.W., the trial court, at mother's request, appointed a psychologist as mother's expert pursuant to § 19-3-607, C.R.S. (1991 Cum.Supp.). The expert conducted an evaluation concerning mother's parental capabilities and her relationship with S.W. and rendered a report based thereon.
At the termination hearing, mother called the psychologist as her witness. He was fully and completely examined on both direct and cross-examination concerning his evaluation, findings, and conclusions. Mother did not request any protective or limiting order concerning the nature or extent of his testimony which was placed of record in a public proceeding.
In the custody proceedings concerning E.H., mother requested and obtained court appointment of the same psychologist as an expert to perform a supplemental custody and visitation evaluation pursuant to § 14-10-127, C.R.S. (1991 Cum.Supp.). Although mother endorsed the psychologist as a witness in her disclosure statement, she did not call him as a witness at the custody hearing, and when R.H. called him as a witness, mother objected.
Relying on B.B. v. People, 785 P.2d 132 (Colo.1990), mother argued that the psychologist's testimony was protected by the attorney-client privilege. She argued that once he was retained as her expert in the termination case, the privilege attached to any communications thereafter made by her to him, including the communications made in the context of the supplemental custody evaluation. The court overruled the objection and allowed the psychologist to testify. We conclude the court committed no error in allowing that testimony.
Section 13-90-107(1)(b), C.R.S. (1987 Repl.Vol. 6A) defines the attorney-client privilege, in pertinent part, as follows:
(1) There are particular relations in which it is the policy of the law to encourage confidence and to preserve it inviolate; therefore, a person shall not be examined as a witness in the following cases:
....
(b) An attorney shall not be examined without the consent of his client as to any communication made by the client to him or his advice given thereon in the course of professional employment; nor shall an attorney's secretary, paralegal, legal assistant, stenographer, or clerk be examined without the consent of his employer concerning any fact, the knowledge of which he has acquired in such capacity.
The privilege "extends to confidential communications by or to the client in the course of gaining counsel, advice, or directions with respect to the client's rights or obligations." Miller v. District Court, 737 P.2d 834 (Colo.1987). In B.B. v. People, supra, our supreme court extended the scope of this statute to hold that an attorney-client privilege exists between an indigent parent and an expert witness appointed pursuant to § 19-3-607 to assist the parent, at the request of the parent's attorney, in a termination of parental rights proceeding.
The privilege is personal to the client. Mountain States Telephone & Telegraph v. DiFede, 780 P.2d 533 (Colo. 1989). It therefore may be waived by the client. A v. District Court, 191 Colo. 10, 550 P.2d 315 (1976). Waiver must be supported by evidence showing that the privilege holder, by words or conduct, has expressly or impliedly forsaken her claim of confidentiality with respect to the information in question. Mountain States Telephone & Telegraph v. DiFede, supra.
The privilege applies only to statements made in circumstances giving rise to a reasonable expectation that the statements will be treated as confidential. Lanari v. People, 827 P.2d 495 (Colo.1992). Furthermore, statements made initially in confidence to an attorney or to one of his representatives under § 13-90-107 lose the shield of the attorney-client privilege if they are subsequently disclosed to third *292 parties. Lanari v. People, supra. Therefore, the privilege is waived by any voluntary disclosure by the privilege holder to a third person. Denver Post Corp. v. University of Colorado, 739 P.2d 874 (Colo. App.1987).
Here, mother correctly asserts that the attorney-client privilege initially attached to her communications made to the psychologist in the termination evaluation. Pursuant to B.B. v. People, supra, mother's statements to him were deemed statements to her attorney for purposes of the attorney-client privilege.
However, a party who calls her attorney as a witness waives the privilege, at least as to confidential transactions covered by the testimony. See Aysseh v. Lawn, 186 N.J.Super. 218, 452 A.2d 213 (1982); Jakobleff v. Cerrato, Sweeney & Cohn, 97 A.D.2d 834, 468 N.Y.S.2d 895 (1983).
Pursuant to B.B. v. People, supra, the psychologist stood in the shoes of mother's counsel when he testified at the termination hearing. Hence, when mother called the psychologist to testify without limitation in the termination hearing, she waived the attorney-client privilege as to communications she made to him in the course of the termination evaluation.
Relying upon Perez v. People, 745 P.2d 650 (Colo.1987), however, mother argues that the psychologist's testimony at the termination hearing did not constitute a waiver of the attorney-client privilege with regard to his testimony at the custody hearing. We disagree.
We conclude that once mother waived the privilege vis a vis communications she made during the termination evaluation, she could not thereafter in different proceedings reassert the privilege with regard to those communications. See Alden v. Stromsem, 347 Ill.App. 439, 106 N.E.2d 837 (1952); McCarthy v. Belcher, 128 Mich.App. 344, 340 N.W.2d 848 (1983); cf. Hamilton v. Hamilton Steel Corp., 409 So.2d 1111 (Fla.Dist.Ct.App.1982). Perez v. People, supra, does not require a different result. It is distinguishable because it was decided under criminal statutes, rules, and policies not relevant here.
Finally, with regard to communications between mother and the evaluator during the custody evaluation, we conclude no attorney-client privilege attached. Section 14-10-127 provides a mechanism for court appointment of an independent evaluator on custody and visitation issues. The purpose of the statute is to make the information available to assist the court in determining what is in the best interests of the children concerned. Pacheco v. Pacheco, 38 Colo.App. 181, 554 P.2d 720 (1976).
Consequently, under the terms of the statute, it is the duty of the court-appointed evaluator to conduct an independent investigation and provide the court and each party with his findings and conclusions. Furthermore, any party may call the evaluator to testify at trial. Section 14-10-127(2) and (3), C.R.S. (1991 Cum.Supp.).
Here, the psychologist was acting as an independent court-appointed evaluator. He was not retained to act on behalf of mother. The only basis for his contact with mother was to report his findings to the court. Information divulged by mother to the evaluator was necessary to his evaluation for the court, and mother knew from the outset that the evaluator would relate his findings and conclusions to the court and to R.H.
Pursuant to the terms of the custody evaluation statute, we conclude that no attorney-client privilege attached to communications made by mother to the psychologist in the course of the custody evaluation and that the trial court correctly admitted the psychologist's testimony at the custody hearing. See Lanari v. People, supra; Denver Post Corp. v. University of Colorado, supra; § 13-90-107(1)(b); cf. Anderson v. Glismann, 577 F.Supp. 1506 (D.Colo.1984).

C.
Mother also contends that R.H. failed to meet his burden of proving the statutory criteria for modification of custody pursuant to § 14-10-131, C.R.S. (1987 *293 Repl.Vol. 6B). In particular, she argues that the evidence did not support the finding that E.H.'s then existing environment impaired her emotional development. We disagree.
The ultimate determination of custody rests solely with the trial court, and its determination will not be disturbed on review absent a clear abuse of discretion. In re Marriage of Clarke, 671 P.2d 1334 (Colo.App.1983). It is within the province of the trial court, as the fact-finder, to make determinations concerning the weight of the evidence, the credibility of witnesses, and the resolution of conflicting evidence. See Root v. Allen, 151 Colo. 311, 377 P.2d 117 (1962).
Here, the record on review, including the testimony of the custody evaluator, supports the trial court's finding that the then existing environment of E.H. impaired her emotional development. Therefore, we will not disturb this finding. Furthermore, the trial court made findings, with ample record support, on the appropriate criteria for modification pursuant to § 14-10-131. Consequently, we affirm and adopt those findings on appeal.
The appeal of the judgment adjudicating S.W. as dependent and neglected is dismissed, the judgment terminating the parent-child relationship between S.W. and her parents is affirmed, and the order modifying custody of E.H. is affirmed.
PIERCE and ROTHENBERG, JJ., concur.