PEOPLE of the State of Colorado, Petitioner–Appellee,

In the Interest of A.N.W., a Child,

and

Concerning T.W., Respondent–Appellant.

No. 98CA0797.

Colorado Court of Appeals, Div. I.

April 1, 1999.

Opinion by Judge TAUBMAN

In this dependency and neglect action presenting procedural issues under the Indian Child Welfare Act, 28 U.S.C. § 1901, et seq. (1994) (ICWA), T.W. (mother) appeals from the judgment terminating the parent-child legal relationship with her daughter, A.N.W. We affirm.

The petition in dependency and neglect here was filed in 1994 when mother was 15 and the child was only 3 days old. The daughter was originally placed with her teen-age mother in a mutual care foster home. Mother was already in the custody of the department of social services (department) as a result of a delinquency case.

The daughter was adjudicated dependent and neglected as to mother on January 25, 1995. Following the adoption of a treatment plan and numerous review hearings, the trial court, after a hearing, terminated mother's parental rights on March 10, 1998.

## I. Indian Child Welfare Act

### A.

Raising the first of several alleged ICWA procedural defects, mother asserts that notice was not provided to the Cherokee Nation Indian tribe as required by the ICWA. We disagree.

The purposes of the ICWA are to promote the best interests of Indian children and to protect the stability of Indian tribes. *People in Interest of A.T.W.S.*, 899 P.2d 223 (Colo. App.1994).

The ICWA requires that the Indian tribe must be notified of any pending parent-child termination proceedings and of the tribe's right to intervene. 25 U.S.C. § 1912(a) (1994 ed.); *People In Interest of P.A.M.*, 961 P.2d 588 (Colo.App.1998).

In August 1996, it was first alleged that the daughter was an Indian child. However, at that time, the tribe could not trace the child in its records through her relatives. The child's membership or eligibility for membership in the Cherokee Nation was not confirmed until August 1997.

The supplemental record contains two notices that were sent to the Cherokee tribe, one in October 1996 and one in July 1997. Ultimately, the tribe filed two motions to intervene, was granted leave to intervene, and participated in the termination hearing. Accordingly, proper notice was provided to the tribe under the ICWA.

### B.

Mother also contends that the trial court erred in not transferring the case to the Cherokee tribe for resolution. Again, we disagree.

Because the child here resides off the reservation, jurisdiction is shared by the state court and the tribal court. *People in Interest of J.L.P.*, 870 P.2d 1252 (Colo.App. 1994). Therefore, upon petition of a parent, the trial court is required "in the absence of good cause to the contrary" to transfer such proceeding to the jurisdiction of the tribe. 25 U.S.C. § 1911(b) (1994 ed.); *People in Interest of A.T.W.S., supra.*

Whether good cause exists to retain jurisdiction is within the juvenile court's discretion. This determination is necessarily made on a case-by-case basis, after careful consideration of all the circumstances of the case. *People in Interest of J.L.P., supra; People in Interest of A.T.W.S., supra.*

Transfer is also subject to declination by the tribal court. 25 U.S.C. § 1911(b) (1994 ed.).

Here, the tribe filed intervention papers in October 1997, and the next month mother filed her motion to transfer the proceedings to the jurisdiction of the Cherokee Nation. Then, in January 1998, the tribe filed a second motion to intervene, proposing that the Colorado court initiate a home study of mother's extended Indian family in the state of Oklahoma.

At the termination hearing in February 1998, the tribe appeared and participated in the state proceedings. The tribe stated that it had not sought to obtain transfer of the case, and desired only to ensure compliance with the procedural requirements of the ICWA. Accordingly, because the tribe essentially declined jurisdiction by intervening here, the trial court did not err in failing to transfer the case.

## C.

■ We also reject mother's assertion that the witness who testified that continued custody of the child with mother would likely result in serious emotional or physical damage to the child was not a "qualified expert" within the meaning of the ICWA.

Termination of the parental rights of an Indian child may not be ordered unless evidence beyond a reasonable doubt, including testimony of "qualified expert witnesses," establishes that continued custody of the child by the parent is likely to result in serious emotional or physical damage to the child. 25 U.S.C. § 1912(f) (1994 ed.).

The ICWA does not define "qualified expert witness." The federal guidelines for Indian child custody proceedings suggest that persons most likely to meet the requirements for a qualified expert witness would possess special knowledge of Indian culture and society. However, such special knowledge is not required. If termination is based on parental unfitness unrelated to Indian culture or society, it is sufficient if such witness has substantial education and experience in his or her area of specialty. *People in Interest of R.L.*, 961 P.2d 606 (Colo.App.

1998); Guidelines for State Courts – Indian Child Custody Proceedings (Guidelines), 44 Fed.Reg. 67,584 at 67,693 (1979).

Here, the trial court found that the child had been integrated into the home of the foster mother since early 1996 and that it was clear an attachment had developed between the child and the foster mother. The court credited the expert testimony of a clinical psychologist to find beyond a reasonable doubt that continuing custody with the parent or Indian custodians was likely to result in serious emotional or physical damage to the child. Based on that opinion, the court also found that a disruption of the child's placement with the foster mother would likely cause irreparable injury or harm to the child.

We conclude that since the expert's opinion in this case was based upon culturally neutral considerations and she had substantial education and experience in her specialty, the expert did not need to have special knowledge of Indian life in order to be qualified to testify under 25 U.S.C. § 1912(f). *See People in Interest of R.L., supra.*

## D.

■ Mother's final procedural challenge is that the court erred in deviating from the ICWA's placement preferences by not placing the child with her great-aunts or maternal grandmother. We perceive no error.

■ Under Colorado law, the trial court must consider and eliminate less drastic alternatives before entering an order terminating the parent-child legal relationship. Ultimately, however, the court must give primary consideration to the child's best interests. *People in Interest of M.M.*, 726 P.2d 1108 (Colo.1986).

The ICWA provides preferences in placing Indian children for adoption. Thus, 25 U.S.C. § 1915(a) (1994) provides:

In any adoptive placement of an Indian child under state law, a preference shall be given, in the absence of good cause to the contrary, to a placement with: (1) a member of the child's extended family; (2) oth-

er members of the Indian child's tribe; or (3) other Indian families.

This statute has been interpreted as expressing a presumption that, in an adoptive placement of an Indian child, the child's best interests are served by placement with an extended family member who also has Indian heritage. To overcome this presumption, a party must establish the existence of "good cause to the contrary." 25 U.S.C. § 1915(a) (1994 ed.); . In re Adoption of Riffle, 277 Mont. 388, 922 P.2d 510 (1996).

Although the ICWA does not define "good cause," the Guidelines describe circumstances which create "good cause" to modify the placement preferences of the Act. One of those circumstances includes the "extraordinary physical or emotional needs of the child as established by testimony of a qualified expert witness." The burden of showing the existence of good cause is on the party urging that the ICWA preferences not be followed. See Guidelines, supra, 44 Fed.Reg. 67,584 at 67,594. (1979).

The Guidelines, as well as the legislative history of the ICWA, state that Congress intended to give state courts discretion and flexibility in these cases. In re Alicia S., 65 Cal.App.4th 79, 76 Cal.Rptr.2d 121 (1998).

Courts addressing the issue of what constitutes good cause under § 1915(a) have considered the best interests of the child, the wishes of the biological parents, the suitability of the persons preferred for placement, the child's ties to the tribe, and the child's ability to make any cultural adjustments necessitated by a particular placement. See In re Adoption of F.H., 851 P.2d 1361 (Alaska 1993); In Interest of A.E., 572 N.W.2d 579 (Iowa 1997) (applying factors to determine existence of good cause under 25 U.S.C. § 1915(b) (1994 ed.)); In re Adoption of M., 66 Wash.App. 475, 832 P.2d 518 (1992); but see In re Custody of S.E.G., 521 N.W.2d 357 (Minn.1994)(determining that finding of best interests is unnecessary and inappropriate under the ICWA); In re Adoption of Riffle, supra (same).

■ The certainty of emotional or psychological damage to the child if removed from the primary caretaker may also be consid-ered by the court in determining whether good cause exists to deviate from the placement preferences of the ICWA. In re Baby Boy Doe, 127 Idaho 452, 902 P.2d 477 (1995).

Here, the child was placed in the custody of the department immediately after her birth in December 1994. The record shows that the child viewed her foster parent, with whom she had resided since March 1996, as the only parent she had ever known. This was partly because mother had left Colorado and had had no contact with the child during a critical time in the child's development, between ages thirteen months and twenty-four months. The motion to terminate mother's parental rights was originally filed in July 1996. When the daughter was finally determined to be an Indian child in late 1997, the focus was still on reunification of mother and her child.

Mother's family did not have a strong affiliation with the tribe, and the maternal grandmother did not express concern regarding the child's Indian heritage until after the department recommended against placement of the child with her. Witnesses for the department testified that neither mother nor the tribe had suggested alternative prospective placements and that no other relatives had come forward to be considered before the out-of-state great aunts were suggested shortly before the termination hearing in February 1998. Although one grandmother testified that she had mentioned her four sisters as possible custodians, she admitted that only the one residing in Texas had seen the child and that was on an occasion approximately one year before the termination hearing.

The trial court noted that other relatives were proposed by the mother and the tribe shortly before the rescheduled termination hearing. However, the court relied upon the opinion of the qualified expert witness to conclude that good cause existed not to investigate other placements for the child under §§ 1915(a) and 1915(b). As previously stated, that expert had testified that continuing custody with the parent or an Indian custodian was likely to result in serious emotional or physical damage to the child. Based on this testimony, the trial court found beyond a

reasonable doubt that removal of the child from her then current placement was likely to cause her irreparable harm.

Under these circumstances, we conclude that the trial court properly deviated from the ICWA's placement preferences and properly considered and rejected alternatives to termination as required by Colorado law. *See In re Baby Boy Doe, supra.*

II. Termination of Parental Rights

Mother contends that the evidence was insufficient to support termination of her parental rights under both Colorado law and the ICWA. We do not agree.

To support termination of the parent-child relationship pursuant to § 19–3–604(1)(c), C.R.S.1998, the evidence must establish that the child has been adjudicated dependent or neglected; that an appropriate treatment plan, approved by the court, has not been complied with by the parent or has not been successful; that the parent is unfit; and that the parent's conduct or condition is unlikely to change within a reasonable time.

The state bears the burden of proof in a proceeding for termination of the parent-child relationship. *People in Interest of M.S.H.,* 656 P.2d 1294 (Colo.1983). Under state law, the criteria for termination must be established by clear and convincing evidence. *People in Interest of A.M.D.,* 648 P.2d 625 (Colo.1982).

However, when the ICWA applies, termination of parental rights may not be ordered unless it is shown beyond a reasonable doubt that continued custody of the child by the parent is likely to result in serious emotional or physical damage to the child. 25 U.S.C. § 1912(f) (1994 ed.); *People in Interest of C.A.J.,* 709 P.2d 604 (Colo.App.1985).

Mother specifically argues that termination was not proper because she had substantially complied with the major portions of the treatment plan, and therefore, the trial court erred in determining that she was unfit to parent her child or that her conduct or condition was unlikely to change within a reasonable time.

It is the parent's responsibility to assure compliance with and success of the treatment plan. *People in Interest of A.H.,* 736 P.2d 425 (Colo.App.1987). A treatment plan is successful if it corrects or improves the conduct or condition that led to state intervention. *People in Interest of C.L.I.,* 710 P.2d 1183 (Colo.App.1985). Although a parent may substantially comply with a treatment plan, the plan ultimately may not be successful. *People in Interest of D.M.W.,* 752 P.2d 587 (Colo.App.1987).

An unfit parent is one whose conduct or condition renders him or her unable to give the child reasonable parental care. Reasonable parental care requires, at a minimum, that the parent provide nurturing and protection adequate to meet the child's physical, emotional, and mental health needs. Section 19–3–604(2), C.R.S.1998; *People in Interest of L.D.,* 671 P.2d 940 (Colo.1983).

In determining whether a parent's conduct or condition is likely to change within a reasonable time to meet the child's needs, the trial court may consider whether any change has occurred between the time the petition was filed and the time of the termination hearing. *See People in Interest of E.H.,* 837 P.2d 284 (Colo.App.1992).

Here, the record shows that mother attended parenting classes, complied with the terms of her probation, and engaged in mental health counseling. However, it also shows that she was unable to hold a job, was sporadic in her visitation, and was unaware of the problems that prevented her from successfully parenting her child. In addition, although mother was able to ensure that the child was safe and clean, she did not interact emotionally with the child and was unable to acknowledge or to respond to the child's feelings. This was demonstrated by the significant distress that occurred during and after visits, which the child began to exhibit shortly before the termination hearing.

Therefore, although mother at times attempted to comply with the treatment plan, it was not successful because she did not form an attachment to the child and was

unable to provide for the child's emotional needs. Thus, the trial court properly concluded that mother was unfit and that her conduct was unlikely to change within a reasonable time.

Similarly, the trial court properly found beyond a reasonable doubt, pursuant to 25 U.S.C. §§ 1912(e) and (f), that continuing custody with mother or Indian custodians was likely to result in serious emotional or physical damage to the child.

Judgment affirmed.

Judge METZGER and Judge CASEBOLT concur.