The PEOPLE of the State of Colorado, Petitioner–Appellee,

In the Interest of S.R.M., a Child,

and

Concerning G.G., T.G., and Citizen Potawatomi Nation, Appellants,

and

N.P. and S.P., Intervenors.

No. 06CA0665.

Colorado Court of Appeals, Div. IV.

Nov. 30, 2006.

Frank J. Hutfless, County Attorney, Roy Wallis, Assistant County Attorney, Golden, Colorado, for Petitioner–Appellee.

Gail Patricia Moloney, Guardian Ad Litem.

Stiner, Beck, Jonson & Nolan, LLP, Kelly R. Southerland, Golden, Colorado, for Appellants G.G. and T.G.

Citizen Potawatomi Nation, Gregory Mark Quinlan, Shawnee, Oklahoma, for Appellant Citizen Potawatomi Nation.

Jenna Reulbach, P.C., Jenna Reulbach, Golden, Colorado, for Intervenors.

Opinion by Judge ROMÁN.

The Citizen Potawatomi Nation (the CPN) appeals from the judgment terminating parental rights as to S.R.M. (the child). Pursuant to 25 U.S.C. § 1914 (2000), the CPN seeks to invalidate the judgment because notice was inadequately given under the Indian Child Welfare Act of 1978, 25 U.S.C. § 1901, et seq. (2000)(ICWA). G.G. and T.G., S.R.M.'s step-aunt and uncle (the relatives) also appeal from the separate order denying their motion to intervene. We vacate the judgment terminating parental rights, affirm the order denying the relatives' motion without prejudice to renew that motion following remand, and remand for further proceedings.

## I.

In February 2005, the Jefferson County Department of Human Services, Division of Children, Youth, and Families (the department) petitioned for temporary legal custody of the child. The following month, the department provided notice to the CPN that a dependency and neglect proceeding had been filed on the child's behalf.

The court adjudicated the child to be dependent and neglected and, in the subsequent dispositional hearing, adopted a treatment plan. Less than three months after the court adopted the treatment plan, the department moved to terminate parental rights. The department did not send notice to the CPN of its intent to terminate parental rights.

The termination hearing took place in August 2005, but the court's written order was not signed until January 2006. The day before the court signed the order terminating parental rights, the CPN wrote a letter to the department indicating that it was in receipt of mother's enrollment application and that the child was "now said to be a direct descendent" of the CPN, was eligible for tribal services, and would be eligible for enrollment once mother was enrolled. The CPN further indicated that if the child had been removed from the home, it would file an entry of appearance so that it could become involved with the case.

The relatives, who were the guardians for mother's three older children, sought permission to intervene under C.R.C.P. 24(b) because they wanted to provide a placement for the child. The CPN then entered its formal entry of appearance and sought to intervene.

The court denied the motions of the CPN and the relatives to intervene. These appeals followed.

## II.

We first address the arguments raised by N.P. and S.P. (the intervenors), the

foster parents of the child, that this court should dismiss this appeal because the notices of appeal filed by the CPN and by the relatives were deficient. We are not persuaded.

The intervenors assert the notices of appeal were deficient because (1) they were not timely served with the notices, and (2) all the documents filed in the matter by the appellants were not in compliance with C.A.R. 3.4 or § 19–1–109(1), C.R.S.2006, because they identify the child by name instead of by her initials.

The intervenors are correct that each appellant had to serve them with a copy of the notice of appeal. *See* C.A.R. 3(d)(8). They are similarly correct that § 19–1–109(1) requires all parties to use initials.

However, the purposes of the notice of appeal are to put the other party on notice that an appeal will be taken and to identify the order or judgment at issue. If the other party could not be misled as to the intention to appeal or as to the order or judgment from which the appeal is to be taken, any technical defect in the notice of appeal is harmless. *Widener v. Dist. Court*, 200 Colo. 398, 615 P.2d 33 (1980). The intervenors have not asserted they were unclear about the intent to appeal or the judgment and orders from which the appeals were taken. They also have stated they received the petitions on appeal, *see* C.A.R. 3.4(g), and therefore they cannot assert they were unaware of the arguments made. Thus, the errors asserted are harmless.

The intervenors also argue the CPN's petition should be dismissed because it was not timely filed with this court. However, the intervenors filed a separate motion on this point, and a motions division of this court has already determined the petition was timely filed.

We thus decline to dismiss either notice of appeal.

### III.

We disagree with the CPN's contention that the judgment of termination must be vacated because of deficiencies in the notice given of the dependency and neglect proceedings. However, we agree with the CPN that the judgment must be vacated because the tribe was not given notice of the subsequent motion for termination.

### A.

■ The CPN asserts the judgment terminating parental rights should be invalidated under 25 U.S.C. § 1914 because the notice provided by the department before the dispositional hearing that a dependency and neglect proceeding had been commenced on behalf of S.R.M. did not contain sufficient information for it to conduct a meaningful search of its records. Although we agree the notice was deficient, we conclude this particular deficiency does not require reversal.

Congress enacted the ICWA because of concerns over the involuntary separation of Indian children from their families for placement in non-Indian homes. *B.H. v. People in Interest of X.H.*, 138 P.3d 299 (Colo.2006). The purpose of the ICWA is to protect Indian children who are members of or are eligible for membership in an Indian tribe. 25 U.S.C. § 1901(3) (2000). The Colorado General Assembly has expressly provided for compliance with, and consistent application of, the ICWA. *See* § 19–1–126, C.R.S.2006.

The ICWA promotes the best interests of Indian children and protects the stability of Indian tribes. The ICWA is based on the presumption that the protection of an Indian child's relationship with the tribe is in the child's best interests. *People in Interest of A.T.W.S.*, 899 P.2d 223 (Colo.App.1994).

The ICWA applies when the state seeks to place an Indian child in foster care and when the state seeks to terminate parental rights. *See* 25 U.S.C. §§ 1911, 1912 (2000). Under those circumstances, whenever the court knows or has reason to know that an Indian child is involved, the party seeking placement or termination must provide notice to the child's tribe or his or her parent's tribe, or to the Bureau of Indian Affairs (the BIA) if the tribe cannot be identified or located. 25 U.S.C. § 1912(a) (2000); *see also People in Interest of A.N.W.*, 976 P.2d 365 (Colo.App. 1999).

If notice is not given in compliance with the provisions of 25 U.S.C. § 1912, the tribe may petition to invalidate the order terminating parental rights. 25 U.S.C. § 1914. The tribe may raise the issue of inadequate notice in the first instance in this court, as the ICWA specifically provides that the issue of inadequate notice may be raised in "any court of competent jurisdiction." 25 U.S.C. § 1914; see In re L.A.M., 727 P.2d 1057 (Alaska 1986); In re Antoinette S., 104 Cal. App.4th 1401, 129 Cal.Rptr.2d 15 (2002).

The Department of the Interior has promulgated Guidelines for State Courts; Indian Child Custody Proceedings, 44 Fed.Reg. 67,584 (Nov. 26, 1979) (Guidelines), to aid in the interpretation and application of the ICWA. B.H. v. People in Interest of X.H., supra; In re Adoption of Riffle, 273 Mont. 237, 902 P.2d 542 (1995).

The Guidelines were authored by the BIA and represent the Department of Interior's interpretation of the ICWA. Although they are not binding, they have been considered persuasive by state courts. B.H. v. People in Interest of X.H., supra; People in Interest of J.L.P., 870 P.2d 1252 (Colo.App.1994); see also In re Karla C., 113 Cal.App.4th 166, 6 Cal.Rptr.3d 205 (2003); In re N.A.H., 418 N.W.2d 310, 311 (S.D.1988).

The Guidelines set forth specific categories of information an agency should include in its notice to a tribe under the ICWA. 25 C.F.R. § 23.11(a), (d), (e) (2001). Notice must include the name, birth date, and birthplace of the Indian child; his or her tribal affiliation; a copy of the dependency petition; the petitioner's name; a statement of the right of the tribe to intervene in the proceeding; and information about the Indian child's biological mother, biological father, maternal and paternal grandparents and great-grandparents or Indian custodians, including maiden, married, and former names or aliases, birth dates, places of birth and death, current and former addresses, tribal enrollment numbers, and other identifying information. Guidelines, 44 Fed.Reg. at 67,588; 25 C.F.R. § 23.11(a), (d); In re Karla C., supra.

Notice under the ICWA must contain enough information to be meaningful. In re Karla C., supra. The primary purpose of giving notice to the tribe is to enable it to determine whether the child is an Indian child. Therefore, notice is meaningless if insufficient information is presented to the tribe. In re S.M., 118 Cal.App.4th 1108, 13 Cal.Rptr.3d 606 (2004).

Citing In re Louis S., 117 Cal.App.4th 622, 12 Cal.Rptr.3d 110 (2004), the CPN asserts the judgment terminating parental rights must be invalidated because the notice provided before the dispositional hearing at which time the child might formally be placed in foster care, see § 19-3-508(1)(c), C.R.S.2006, did not contain any information about the biological mother's ancestors or the father of the child. In Louis S., the court reversed two interim orders in a dependency proceeding because the social worker provided insufficient and incorrect information to the tribes and the BIA to allow them to determine whether the child was an Indian child, even though the information was known to, or was available to, her.

The department asserts Louis S. is inapplicable because the notice here "provided every piece of information available at the time." However, the record shows mother told the caseworker she was eligible for tribal enrollment. The caseworker had previously received reports from the maternal grandparents about prior safety concerns and apparently knew how to contact them. She indisputably knew how to contact the maternal aunt. Thus, the caseworker knew that the maternal relatives were the pertinent relatives and had information in her possession about them. Her failure to place that information in the notice sent to the CPN was in contravention of the Guidelines. See Guidelines, 44 Fed.Reg. at 67,588; 25 C.F.R. § 23.11(d). The notice here that was required to be given because S.R.M. might be placed in foster care was not provided in compliance with the ICWA.

However, the record shows the CPN already knew mother was eligible to enroll and therefore knew the child would be eligible to enroll once mother enrolled. Thus, the CPN did not need the information about the maternal relatives to determine the child's eligibility. Under these circumstances, the inad-

equate notice constitutes harmless error. *See In Interest of H.A.M.*, 25 Kan.App.2d 289, 961 P.2d 716 (1998).

### B.

■ The CPN asserts the department had to provide notice when the motion to terminate parental rights was filed. We agree.

Pursuant to 25 U.S.C. § 1912(a),

[i]n any involuntary proceeding in a State court, where the court knows or has reason to know that an Indian child is involved, the party seeking foster care placement of, or termination of parental rights to, an Indian child shall notify ... the Indian child's tribe ... of the pending proceedings and of their right of intervention.

*See also People in Interest of A.N.W., supra; People in Interest of P.A.M.*, 961 P.2d 588 (Colo.App.1998).

The record shows that, although notice had been provided before the dispositional hearing, notice was not given with or following the department's filing of the motion to terminate parental rights. It also shows the department was not seeking to terminate parental rights when it sent the earlier notice to the CPN. This failure to give timely notice violates the plain meaning of 25 U.S.C. § 1912(a).

The department asserts it had no duty to notify the CPN because the CPN had not responded to its earlier notice and § 19–1–307, C.R.S.2006, prohibits disclosure of juvenile records to nonparties. However, the department cites no authority for the proposition that a tribe's lack of response vitiates the clear requirement in the ICWA that notice must be sent when the state seeks to terminate parental rights. *See* 25 U.S.C. § 1912(a); *see also S.H. v. Calhoun County Dep't of Human Res.*, 798 So.2d 684 (Ala.Civ. App.2001) (reversal required when there was no evidence that the state notified the Indian tribe of the petition to terminate parental rights, even though there was evidence that notice of the dependency filing may have been sent).

In every termination of parental rights proceeding in Colorado, the petitioning party has an affirmative duty to make continuing inquiries to determine whether the subject child is an Indian child and to give notice in the manner prescribed by statute whenever the petitioning party knows or has reason to believe that the child who is the subject of the proceeding is an Indian child. Section 19–1–126(1)(a)–(b), C.R.S.2006.

Finally, we note that statutes enacted for the benefit of Indians must be "liberally construed in favor of Indian interests." *B.H. v. People in Interest of X.H., supra*, 138 P.3d at 302. Thus, if there was any question about whether notice had to be given both before the department sought to put the child in foster care and when it sought to terminate parental rights, that question should be resolved in favor of giving notice twice.

The record shows the caseworker knew that the child could become enrolled in the tribe if mother enrolled in the tribe. Thus, to discharge the obligations under § 19–1–126, the caseworker had to conduct a continuing inquiry and provide notice.

We also conclude the department had to give notice when it sought to terminate parental rights because the CPN had no notice that the child had been removed from parental custody. The notice sent to the CPN stated the next hearing was a "treatment plan hearing," but it did not state the child had already been removed from parental custody. The ICWA requires notice when child welfare authorities seek to place a child in foster care or to terminate parental rights; it does not require notice anytime a child of possible or actual Indian descent is involved in a dependency proceeding. If the state sought neither foster care nor termination of parental rights, the ICWA would not apply. *See In re Alexis H.*, 132 Cal.App.4th 11, 33 Cal.Rptr.3d 242 (2005). Because the notice did not indicate the department was seeking to place the child in foster care or to terminate parental rights, the CPN could have concluded that the ICWA was not yet at issue.

The department appears to argue the CPN waived its right to obtain further notice by not timely responding to the initial notice. However, a tribe does not waive its right to intervene, and therefore its corresponding

right to receive notice, unless it explicitly states that it will not intervene. *See In Interest of A.P.*, 25 Kan.App.2d 268, 961 P.2d 706 (1998) (a failure to intervene cannot, by itself, be considered a declination of jurisdiction); *In re Adoption of Riffle, supra; In re A.G.*, 326 Mont. 403, 109 P.3d 756 (2005); *In re Guardianship of Q.G.M.*, 808 P.2d 684 (Okla.1991)(a tribe is not precluded from intervening at a later point in the proceedings absent an express waiver). A waiver of rights by the tribe should not be inferred. *Cf. In re Adoption of Riffle, supra.* Because the CPN has a right to notice, we cannot infer it waived that right unless it expressly indicates it chooses not to become involved.

The intervenors argue there was no error because at the time of the termination hearing she was not enrolled in the tribe nor was she the biological child of an enrolled member of the tribe and thus was not an Indian child. However, the state's obligation to notify potentially concerned tribes or the BIA necessarily arises prior to an ultimate determination of the child's Indian status. As long as there is sufficiently reliable information of virtually any criteria on which membership might be based, there is adequate information to trigger the notice provisions of the ICWA. These criteria have included, but are not necessarily limited to, such considerations as enrollment, blood quantum, lineage, or residence on a reservation. *B.H. v. People in Interest of X.H., supra.* Here, when the caseworker filed the motion to terminate, she knew that the child would be eligible to enroll in the CPN if mother enrolled. Under *B.H.*, this knowledge was sufficient to warrant notice.

In sum, we conclude that because the CPN had not specifically indicated it was not going to intervene, the department was required under 25 U.S.C. § 1912(a) to send notice of the termination hearing. Its failure to do so requires invalidating the judgment of termination. *See* 25 U.S.C. § 1914.

In light of this determination, we need not reach the CPN's other arguments.

## IV.

The relatives, the child's step-aunt and uncle, assert the court abused its discretion by denying their motion to intervene. We are not persuaded.

C.R.C.P. 24(b) allows anyone to intervene once a timely application is filed when (1) a statute confers a conditional right to intervene, or (2) the applicant's claim or defense and the main action have a question of law or fact in common.

Pursuant to § 19–3–605(1), C.R.S.2006, an aunt is an interested party in a proceeding for termination and may intervene in the proceeding by making a timely application prior to the termination hearing. *People in Interest of C.E.*, 923 P.2d 383 (Colo.App. 1996). For purposes of this appeal, we will assume, but do not decide, that being step-relations qualifies the relatives to conditionally intervene as interested parties pursuant to § 19–3–605(1).

The request to intervene must be submitted no more than twenty days after the motion to terminate parental rights has been filed. Section 19–3–605(1). When a relative who falls within the terms of § 19–3–605(1) does not file a motion to intervene until after the conclusion of the termination hearing, the trial court may properly deny the motion as untimely. *People in Interest of C.E., supra.*

Because the record shows the motion to intervene was filed almost one month after the court's judgment terminating parental rights, the court did not abuse its discretion in denying the relatives' motion to intervene. *See People in Interest of C.E., supra.*

However, although we perceive no abuse of discretion, because we vacate the judgment terminating parental rights as discussed above, nothing in this opinion should foreclose the relatives' ability to petition for intervention following remand if they so choose.

The judgment terminating parental rights is vacated, and the case is remanded for further proceedings consistent with this opinion. The order denying the relatives' motion to intervene is affirmed, without prejudice to their renewing the motion on remand.

Judge ROY and Judge LOEB concur.