22CA0310 Peo in Interest of ADL 09-15-2022

COLORADO COURT OF APPEALS

---

Court of Appeals No. 22CA0310
Pueblo County District Court No. 21JV29
Honorable William D. Alexander, Judge

---

The People of the State of Colorado,

Appellee,

In the Interest of A.D.L., a Child,

and Concerning A.R.L.,

Appellant.

---

JUDGMENT AFFIRMED

Division V
Opinion by JUDGE JOHNSON
Navarro and Welling, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced September 15, 2022

---

Cynthia Mitchell, County Attorney, David A. Roth, Special Assistant City Attorney, Pueblo, Colorado, for Appellee

Debra W. Dodd, Guardian Ad Litem

Patrick Henson, Office of Respondent Parents' Counsel, Denver, Colorado, for Appellant

¶ 1     In this dependency and neglect proceeding, A.R.L. (father) appeals the juvenile court's order allocating parental responsibilities for A.D.L. (the child) to the child's maternal aunt and uncle.  Father argues that the juvenile court did not comply with the inquiry requirements of the Indian Child Welfare Act (ICWA) and that the court abused its discretion when it ordered an allocation of parental responsibilities (APR).  We conclude that any failure of the juvenile court to inquire into the applicability of ICWA was harmless, perceive no abuse of discretion in the court's APR order, and affirm the judgment.

## I.     Background

¶ 2     The Pueblo County Department of Human Services (Department) filed a petition in dependency and neglect regarding the newborn child.  The Department alleged that the child tested positive for opiates and methamphetamine at birth.  The Department's intake caseworker tried to contact father several times but did not receive a response.  Maternal aunt and uncle, who had previously adopted one of the child's half-siblings, took placement of the child.

¶ 3     The juvenile court accepted father's admission to the petition and adjudicated the child dependent and neglected.  The court adopted a treatment plan for father requiring that he, among other things, (1) complete a substance abuse evaluation and participate in any recommended treatment; (2) submit random sobriety tests; (3) complete a parenting class; (4) visit the child regularly; and (5) communicate and cooperate with the Department.

¶ 4     The Department later moved for an APR to maternal aunt and uncle.  After a hearing, which father did not attend, the juvenile court granted the motion and allowed father supervised visits at least twice a week at his own expense.

## II.    ICWA

¶ 5     Father contends that the court did not comply with ICWA because it failed to inquire of him about possible Native American heritage.  We agree that the juvenile court did not make an inquiry of father when he first attended a hearing but conclude that any error was harmless.

A.    Standard of Review and Applicable Law

¶ 6    We review de novo the juvenile court's determination that ICWA does not apply. *People in Interest of A.R.*, 2012 COA 195M, ¶ 17.

¶ 7    ICWA's provisions are for the protection and preservation of Indian tribes and their resources and to protect Indian children who are members of or are eligible for membership in an Indian tribe. 25 U.S.C. § 1901(2), (3). ICWA recognizes that Indian tribes have a separate interest in Indian children that is equivalent to, but distinct from, parental interests. *B.H. v. People in Interest of X.H.*, 138 P.3d 299, 303 (Colo. 2006); *see also Mississippi Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 52 (1989). Accordingly, in a proceeding in which ICWA may apply, tribes must have a meaningful opportunity to participate in determining whether the child is an Indian child and to be heard on the issue of ICWA's applicability. *B.H.*, 138 P.3d at 303.

¶ 8    To ensure tribes have an opportunity to be heard, Colorado's ICWA-implementing legislation provides that in dependency and neglect proceedings, the petitioning party must make continuing

inquiries to determine whether the child is an Indian child.  § 19-1-126(1)(a), C.R.S. 2021; *see also B.H.*, 138 P.3d at 302.

¶ 9    In 2016, the Bureau of Indian Affairs also issued regulations and guidelines implementing ICWA.  *People in Interest of L.L.*, 2017 COA 38, ¶ 15; Indian Child Welfare Act Proceedings, 81 Fed. Reg. 38,778 (June 14, 2016); Bureau of Indian Affairs, Guidelines for Implementing the Indian Child Welfare Act (Dec. 2016), https://perma.cc/3TCH-8HQM (2016 Guidelines); *see also* Notice of Guidelines, 81 Fed. Reg. 96,476 (Dec. 30, 2016).  The 2016 Guidelines and regulations impose a duty of inquiry and notice on juvenile courts.

¶ 10   A juvenile court must ask each participant on the record at the beginning of every emergency, voluntary, or involuntary child custody proceeding whether the participant knows or has reason to know that the child is an Indian child.  25 C.F.R. § 23.107(a) (2022); *see also L.L.*, ¶ 19.  A child custody proceeding includes a hearing on a motion to allocate parental responsibilities.  *People in Interest of K.G.*, 2017 COA 153, ¶¶ 16-18.  The inquiry must be made at the commencement of the proceeding and all responses should be on the record.  25 C.F.R. § 23.107(a).

## B. Analysis

¶ 11 Father did not appear at the initial hearing. The child's mother appeared, and her counsel stated that ICWA did not apply. The court then stated "all indications would suggest that ICWA does not apply" but told the Department that they should continue to investigate.

¶ 12 Father appeared by phone at the adjudicatory hearing and the court accepted his admission to the petition. The juvenile court, however, did not inquire into the applicability of ICWA.

¶ 13 Father attended only two other hearings, and the court did not inquire about the applicability of ICWA at those hearings either. Father did not submit a declaration of Indian or non-Indian heritage.

¶ 14 Father did not appear at the APR hearing. During that hearing, the caseworker testified that neither parent nor any family indicated that the child may be eligible for enrollment in an Indian tribe and that she had no other information indicating that the child was an Indian child. The court asked the caseworker directly whether she inquired of the parents and the family about the applicability of ICWA and she responded "[y]es, . . . [w]e've inquired

5

in court, during [family team meetings], and I've, to my recollection I've never documented that they reported that there was any heritage." The juvenile court then found that ICWA did not apply because "the child is not a member of or eligible for membership in an Indian tribe."

¶ 15    The juvenile court should have inquired about father's potential Indian heritage when father first appeared in court. And, although father did not appear at the APR hearing, the court should have asked his counsel whether she had any additional information as to whether ICWA applied. Paternal grandmother was also present at the APR hearing and the court could have inquired of her regarding any Indian heritage, but the court did not do so.

¶ 16    Based on this record, we conclude that the juvenile court did not sufficiently inquire about father's possible Indian heritage. But we conclude the error is harmless for four reasons. *See* C.A.R. 35(c) (An appellate court "may disregard any error or defect not affecting the substantial rights of the parties."); *People in Interest of S.R.M.,* 153 P.3d 438, 441-42 (Colo. App. 2006) (defects in ICWA inquiry may be harmless if no party has any information suggesting that the child is an Indian child).

¶ 17   First, the caseworker's testimony supports that the Department had made inquiry to the parents and there was no information indicating possible Indian heritage concerning either parent.

¶ 18   Second, father does not on appeal contend he has any Indian heritage or information suggesting that the child is an Indian child. Instead, he simply asserts that the juvenile court did not comply with the inquiry requirements of ICWA.  *See People in Interest of C.B.,* 2019 COA 168, ¶ 31 (where parent does not claim Indian heritage on appeal, lack of inquiry by the juvenile court constitutes harmless error).

¶ 19   Third, although father was not present at the APR hearing, he was represented by counsel, who did not provide any information indicating that the child is an Indian child.

¶ 20   And finally, although the placement of the child with the maternal aunt and uncle with an APR was a "child custody proceeding," as defined under ICWA, *see* 25 U.S.C. § 1903(1)(i), the child was placed with maternal relatives who had adopted a half-sibling, which complies with ICWA's preferred placement preference guidelines.  *See* 25 U.S.C. § 1915(a).

### III.   APR

¶ 21    Father also argues that the juvenile court abused its discretion when it granted an APR to maternal aunt and uncle, further asserting that the court should have placed the child with paternal grandmother.  He also asserts that the restriction on his parenting time was tantamount to a termination of parental rights.  We are not persuaded.

#### A.    Standard of Review and Applicable Law

¶ 22    A determination of the proper legal standard to be applied in a case and the application of that standard to the particular facts of the case are questions of law that we review de novo.  *M.A.W. v. People in Interest of A.L.W.*, 2020 CO 11, ¶ 31.  But we will not disturb the juvenile court's factual findings and conclusions when they are supported by the record.  *Id.* at ¶ 32.

¶ 23    The Children's Code authorizes a juvenile court to enter an APR order when it maintains jurisdiction in a case involving a child who is dependent and neglected.  *See* § 19-1-104(5)-(6), C.R.S. 2021; *see also People in Interest of E.Q.*, 2020 COA 118, ¶ 10. When allocating parental responsibilities in a dependency and neglect proceeding, the court must consider the legislative purposes

of the Children's Code under section 19-1-102, C.R.S. 2021. *People in Interest of N.G.G.*, 2020 COA 6, ¶ 11.

¶ 24   The overriding purpose of the Children's Code is to protect a child's welfare and safety by providing procedures through which the child's best interests can be served. *L.G. v. People*, 890 P.2d 647, 654 (Colo. 1995). Consequently, the court must allocate parental responsibilities in accordance with the child's best interests. *N.G.G.*, ¶ 12; *see L.A.G. v. People in Interest of A.A.G.*, 912 P.2d 1385, 1391 (Colo. 1996).

## B.   Analysis

¶ 25   The juvenile court found that an APR to maternal relatives was in the child's best interests. The court noted that father had no relationship with the child and had not complied with any part of his treatment plan. The court found that the child had been with maternal aunt and uncle since she left the hospital, that they were willing to be a long-term resource, and that the child was bonded to them and would grow up with a half-sibling in that household. The court ordered that both parents have two visits per week supervised by an outside agency, at their own expense, and ordered that

neither parent have any other contact with the child including at visits with the grandparents.

¶ 26 We conclude that the record supports the juvenile court's conclusions. *See M.A.W.,* ¶ 32.

¶ 27 The caseworker testified that father did not complete any component of his treatment plan and did not communicate with the Department at all. She testified that father never visited the child, he had three open warrants at the time of the APR hearing, and, in her opinion, he was unfit to parent the child.

¶ 28 The caseworker testified that it was in the child's best interests to remain with maternal aunt and uncle because she had been there since she left the hospital and lived with a half-sibling, and the family facilitated contact with mother's other children on a regular basis. The caseworker opined that father needed professionally supervised visits because he had never met the child and she had concerns about whether paternal grandmother would be protective.

¶ 29 On appeal, father argues that, although paternal grandmother had no problems with her own visits, she had raised concerns about the state of maternal aunt and uncle's home and their

supervision of the child. But these arguments invite us to reweigh the evidence or substitute our judgment for that of the juvenile court. Because it is within the juvenile court's purview to weigh the evidence and assess the credibility of the witnesses, we discern no error in the court's decision to disregard or afford little weight to some of paternal grandmother's testimony. *See People in Interest of A.J.L.*, 243 P.3d 244, 249-50 (Colo. 2010).

¶ 30    Decisions about parenting time are within the juvenile court's sound discretion, *People in Interest of D.G.*, 140 P.3d 299, 302 (Colo. App. 2006), and we cannot disturb the court's decision where, as here, there is some evidence in the record supporting the court's finding, *see People in Interest of A.M.K.*, 68 P.3d 563, 565 (Colo. App. 2003).

IV.    Conclusion

¶ 31    We affirm the judgment.

JUDGE NAVARRO and JUDGE WELLING concur.